[Nos. 13065-7-III; 13066-5-III.    Division Three.    June 9, 1994.]

KENNETH W. BURCHELL, *Respondent*, v. LARRY
THIBAULT, *Appellant*.

KENNETH W. BURCHELL, *Respondent*, v. EDDIE
YAMANE, *Appellant*.

*Erika Balazs* and *Lukins & Annis P.S.*, for appellants.
*Alan L. McNeil*, for respondent.

SCHULTHEIS, J. — After trial to the bench, the Spokane
County Superior Court found in favor of Kenneth Burchell
on his civil harassment claim and entered protection orders
against Larry Thibault and Eddie Yamane. Appellants con-
tend: (1) the findings are unsupported by the evidence and in
turn fail to support the conclusions; and (2) the civil harass-
ment statute is vague and overbroad. We reverse.

Nichiren Shoshu Temple (NST) is the "temple side" of
Japanese Buddhism and is a religious order operated by

ordained priests. Various lay groups also practice Buddhism, but without official sanction by NST. One of these is Soka Gakkai International (SGI). SGI was affiliated with NST and supported the parent organization, financially and otherwise, but about a year prior to the events giving rise to this controversy, NST excommunicated the members of SGI. The record does not disclose what prompted this action.

Among those SGI members affected were Mr. Yamane, Mr. Thibault, Dave Mount, Shizuko Shiosake and Melissa Smith. Mr. Yamane learned the regional high priest of NST, Reverend Jiho Takahashi, had left San Francisco and was due to arrive in Spokane. Mr. Yamane alerted Mr. Thibault who contacted Ms. Shiosake and Ms. Smith. They decided to meet Reverend Takahashi's plane so Mr. Yamane and Ms. Shiosake could confront him about the rift. Mr. Yamane left his home in Seattle, bringing with him surveillance equipment, and met with the others in the group who resided in Spokane. On May 23, 1992, they drove to the Spokane International Airport. Mr. Thibault and Mr. Mount did not enter the terminal and remained in their respective vehicles, each equipped with a walkie-talkie.

Forewarned of a possible confrontation, two NST members, Mr. Burchell and Paul Knutson, were at the airport to greet the plane. Mr. Burchell had been a member of SGI but left to join NST. The reason for Reverend Takahashi's presence in Spokane was to officiate at Mr. Burchell's wedding over the weekend. Reverend Takahashi and his assistant, Yoshiko Huseth, deplaned and as the four of them stood together, Mr. Yamane approached the group and began speaking to the priest in a loud and aggressive manner. The two were in bodily contact and Mr. Yamane was "in his face". Mr. Burchell directed Mr. Yamane to step back. A scuffle ensued when Mr. Burchell interposed himself between Mr. Yamane and Reverend Takahashi in response to a perceived threat of physical violence. The NST party then proceeded through the concourse toward the exit. Along the way, Mr. Yamane continued to shout at Reverend Takahashi who did not respond. The 1-sided conversation was in both English

and Japanese. Mr. Burchell did not understand Japanese and, at trial, the only comments he could attribute to Mr. Yamane were "Stop. We want to talk to you. We want to talk to your priest. We want to go to your meeting."

As the party walked toward the main terminal, Ms. Shiosake, accompanied by Ms. Smith, confronted Reverend Takahashi. Mr. Knutson positioned himself between the priest and his adversary. In the process, he hooked Ms. Shiosake's purse with a luggage cart and tugged it from her grasp. On reaching the magnetometer station, Mr. Burchell asked one of the attendants to summon airport security for assistance in preventing the SGI contingent from following and harassing Reverend Takahashi. Mr. Yamane and Ms. Shiosake continued to try to talk to the priest. All of the SGI members were chattering loudly and several were grasping at the NST group. Security personnel contacted the SGI contingent in the terminal parking garage which allowed the Takahashi party to escape. After engaging in brief conversation, the officers took no action.

The NST members retrieved their automobile and prepared to drive to Coeur d'Alene, Idaho, where Mr. Burchell resides. Still intent on confronting Reverend Takahashi, the SGI group put into operation a backup plan to maintain contact. Mr. Mount observed Mr. Burchell's vehicle leave the parking garage and radioed Mr. Thibault on a walkie-talkie. The two surveillance vehicles fell in behind Mr. Burchell's vehicle as he left the airport. While on the Interstate 90 freeway, Mr. Burchell sensed he was being followed and brought his vehicle to a halt at an access ramp to confirm his suspicions. Another vehicle did likewise, and in the front seat were Mr. Yamane and Mr. Thibault. No threats, menacing gestures or verbal abuse occurred, although Mr. Burchell did observe one of the men had what appeared to be a walkie-talkie. Mr. Burchell then took evasive action by leaving the freeway. He was followed by Mr. Thibault. He reentered the freeway, again followed by Mr. Thibault's car, and proceeded to his destination.

Various incidents occurred in Idaho later in the day and the following morning. Among them, Mr. Yamane and Mr. Thibault had difficulty finding accommodations that evening and finally located a bed and breakfast facility where they remained for the night. It happened to be the same bed and breakfast where Reverend Takahashi and his assistant were staying. Testimony relating to events transpiring in Idaho was excluded because the court concluded that extraterritorial harassment, if any, was not relevant. Some information developed nonetheless when Mr. Thibault testified without objection to meeting Reverend Takahashi in Coeur d'Alene. The priest and his assistant were having breakfast. Mr. Yamane and Mr. Thibault joined them, there apparently being only one table at the facility. The situation was "tense", but not confrontational. The SGI members were still intent on engaging the priest in dialogue, but another couple staying at the bed and breakfast sat down at the table and Mr. Thibault felt it would not have been "really appropriate to talk to him" under the circumstances. The priest left the table after the first course of the meal and did not return.

Mr. Yamane, Ms. Shiosake and several other SGI members returned to the airport later that day in the belief Reverend Takahashi would be departing and they might again have an opportunity to speak with him. He was, but security personnel allowed the priest to avoid public access areas and to leave through a special gate. There was no contact at the time between any of the NST and SGI members.

Mr. Burchell commenced an action under RCW 10.14 seeking civil antiharassment orders against Mr. Yamane, Mr. Thibault and Ms. Shiosake. At the close of the evidence, the court dismissed the action as to Ms. Shiosake but held against her male companions and restrained them from engaging in acts of intimidation or harassment directed at Mr. Burchell.

Washington has taken a strong interest in protecting its citizens against harassment:

> The harassment statute [RCW 9A.46.020(1)] is part of a multifaceted remedial scheme the Legislature established to protect citizens from harmful harassing behavior. Two other

criminal harassment statutes, already in place at the time RCW 9A.46.020 was enacted, address aggression and intimidation motivated by bigotry or other prejudices, RCW 9A.36.080 ("malicious harassment"), and certain forms of harassment, intimidation, torment or embarrassment effected by telephone, RCW 9.61.230. In addition, observing that the problem of harassment is one of increasing severity, the Legislature just last year established mechanisms to improve civil antiharassment protection. RCW 10.14. Washington law thus provides a "full spectrum of legal remedies, both civil and criminal, legal and equitable" designed "to provide meaningful relief in the myriad situations where harassment occurs."

*State v.Smith*, 111 Wn.2d 1, 3, 759 P.2d 372 (1988);[1] *see* RCW 9A.46.060 (listing 33 crimes which may constitute harassment).

With the exception of a single decision construing a jurisdictional provision, the civil antiharassment statute has not yet been construed.[2] However, the elements of a cause of action appear clearly from the face of the statute and require "[1] a knowing and wilful [2] course of conduct [3] directed at a specific person [4] which seriously alarms, annoys, or harasses such person, and [5] which serves no legitimate or lawful purpose." RCW 10.14.020(1). The course of conduct may be brief, but must evidence "continuity of purpose". RCW 10.14.020(2). In an effort to accommodate the vagueness problem which has plagued antiharassment legislation in the past, conduct is tested both subjectively and objectively in that it must be "such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner." RCW 10.14.020(1). *Cf. Everett v. Moore*, 37 Wn. App. 862, 866-67, 683 P.2d 617 (1984).

Were Reverend Takahashi a party to the case, it would appear the requisites of RCW 10.14.020 are met. The trial court could have found a "knowing and wilful course of conduct directed at a specific person which seriously alarms, annoys, or harasses such person, and which serves no legiti-

---

[1]RCW 9A.36.080 was struck down in part in *State v. Talley*, 122 Wn.2d 192, 216-17, 858 P.2d 217 (1993).

[2]*McIntosh v. Nafziger*, 69 Wn. App. 906, 851 P.2d 713 (1993).

mate or lawful purpose." Certainly there was scienter as evidenced by the advance plan to provide for surveillance. There was a course of conduct which began at the airport, stretched 35 miles into the next state, and then back again to the airport. Whether Reverend Takahashi subjectively suffered emotional distress cannot be ascertained from the record because it was not in issue.[3]

Reverend Takahashi is not a party to the action. Mr. Burchell is, and his case turns on a single passage in the findings and conclusions. Appellants contend the trial court expressly found that Mr. Burchell was not targeted. What the court actually found is that no one contended to the contrary:

> The respondents contend that there is no basis for an order protecting the petitioner because their conduct was directed toward Reverend Takahashi, not toward the petitioner, and Reverend Takahashi has neither filed a complaint nor appeared to testify in these actions. *While it is undisputed that none of the respondents' conduct was directed at the petitioner*, it was nonetheless intimidating to him and I believe it comes within the prohibition of the statute.

(Italics ours.)

■ RCW 10.14.020(1) provides that harassing conduct be "directed at a specific person". The words "directed at" cannot be ignored, and the only way to give them meaning is to conclude that the scienter aspect goes not only to the commission of the conduct, but to the identity of the targeted victim as well.

The statute is not designed to penalize people who are overbearing, obnoxious or rude. It is geared to protect those victims to whom objectionable behavior is directed. Mr. Burchell was not a victim. He just happened to be in the company of the Reverend Takahashi.

The statute is not intended to provide redress for past injury. The purpose of the legislation is to facilitate the issuance of "protection orders *preventing* all *further* unwanted

---

[3]The trial court's oral decision did not focus on activity at the airport. Voices were raised, tempers flared, and jostling occurred, but to most people, the events would constitute little more than a fleeting episode of embarrassment. What the trial court did focus on was the surveillance in light of the airport incident.

contact between the victim and the perpetrator." (Italics ours.) RCW 10.14.010. An incidental victim not the target of harassment does not require protection from further unwanted contact.

There is no need to address Appellants' constitutional issues. *State v. Smith*, 104 Wn.2d 497, 505, 707 P.2d 1306 (1985).

Attorney fees on appeal are denied.

Reversed.

THOMPSON, C.J., and SWEENEY, J., concur.