# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 71201-2-I |
| | ) | consolidated with |
| RUSTINA V.H.C. GUTHRIE, | ) | No. 71490-2-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOSEPH F. ZARATKIEWICZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: July 20, 2015 |
| | ) | |

VERELLEN, A.C.J. — The trial court issued a protection order restraining Rustina Guthrie from (1) communicating with any of her ex-husband's prospective employers, (2) communicating with any branches of the military or Veteran's Administration about any matters regarding her ex-husband, and (3) providing her ex-husband's medical information or academic transcripts to any entity or individual. The trial court also held Guthrie in contempt of court for violating the protection order. Because the protection order is "not specifically crafted to prohibit only unprotected speech,"[1] we conclude the order constitutes an impermissible prior restraint. Although substantial evidence supports a protection order, this protection order is overbroad. Because the contempt order was based upon the overbroad protection order, it must be reversed.

---

[1] In re Marriage of Meredith, 148 Wn. App. 887, 898, 201 P.3d 1056 (2009).

## FACTS

This appeal is the latest chapter in a long-running and litigious dispute between Guthrie and her ex-husband, Joseph Zaratkiewicz. Guthrie and Zaratkiewicz married in 1994, divorced in 2001, remarried in 2005, and divorced for the second time in 2011.

Guthrie obtained multiple contempt orders against Zaratkiewicz for his failure to pay child support. Those orders required Zaratkiewicz to provide Guthrie his job applications and job contacts until he showed proof of full-time employment. Guthrie was also authorized to contact prospective employers "to see if they [were] contemplating his employment" and to verify Zaratkiewicz's applications.[2]

In August 2013, the trial court found that Zaratkiewicz intentionally failed to comply with the purging conditions of a May 2013 contempt order. The court imprisoned Zaratkiewicz for his recalcitrance. He was released one week later.

In September 2013, Zaratkiewicz obtained a temporary antiharassment protection order against Guthrie. On October 2, 2013, the trial court issued Zaratkiewicz a one-year antiharassment protection order against Guthrie. The order stated:

> The Respondent shall refrain and immediately desist from communicating in any way—including by telephone, e-mail, letter, texting with any prospective employers of the Petitioner. The Respondent is further prohibited from communicating in any way with any branches of the military or Veterans Administration regarding the Petitioner. Respondent shall not provide medical information or academic transcripts pertaining to the Petitioner to any entity or individual.[3]

---

[2] Report of Proceedings (RP) (Dec. 13, 2012) at 24.

[3] Clerk's Papers (CP) at 36.

2

The day after Zaratkiewicz obtained an antiharassment protection order, Guthrie sent Zaratkiewicz's commander at the National Guard an envelope containing his military, financial, and medical records. Guthrie also contacted one of Zaratkiewicz's prospective employers, seeking to depose him. At a December 13, 2013 hearing, the trial court determined Guthrie was in contempt for violating the antiharassment protection order. The trial court later extended the terms of the October 2, 2013 antiharassment protection order until October 1, 2015.

Guthrie appeals both the trial court's October 2, 2013 antiharassment protection order and the December 13, 2013 contempt order.

## ANALYSIS

### Protection Order

In this consolidated appeal, Guthrie first contends the trial court erred by granting the protection order because there is insufficient evidence that she committed unlawful harassment. We disagree.

We review the trial court's decision to grant or deny a protection order for an abuse of discretion.[4] We limit our review to determining whether substantial evidence supports the trial court's findings.[5] Substantial evidence is evidence sufficient to convince a rational person of the truth of the finding.[6]

---

[4] RCW 10.14.080(6); State v. Noah, 103 Wn. App. 29, 43, 9 P.3d 858 (2000).

[5] In re Marriage of Rideout, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003) (where court holds a hearing and weighs contradictory evidence before entry of a protection order, the proper standard of review is substantial evidence).

[6] In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009).

A superior court may enter a civil antiharassment protection order if it finds by a preponderance of the evidence that unlawful harassment exists.[7] "Unlawful harassment" is a "knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose."[8] A "course of conduct" is "a pattern of conduct, composed of a series of acts over a period of time, however short, evidencing a continuity of purpose."[9] An individual's course of conduct is measured both subjectively and objectively.[10] The course of conduct must be "such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner."[11] The course of conduct may include harassing behavior directed to others who have a relationship with the petitioner, even though the others are not parties to the action.[12] "Constitutionally protected activity is not included within the meaning of 'course of conduct.'"[13]

Although vigorously disputed by Guthrie, the record contains substantial evidence supporting the trial court's determination that Guthrie committed unlawful harassment. The record includes evidence of her conduct:

- contacting Zaratkiewicz's former community college in a purported official capacity and asserting that his transcript was fraudulent;

---

[7] RCW 10.14.080(3); Noah, 103 Wn. App. at 38.

[8] RCW 10.14.020(1).

[9] RCW 10.14.020(2).

[10] Burchell v. Thibault, 74 Wn. App. 517, 521, 874 P.2d 196 (1994).

[11] RCW 10.14.020(1).

[12] Trammel v Mitchell, 156 Wn.2d 653, 665, 131 P.3d 305 (2006).

[13] RCW 10.14.020(2).

4

- contacting the Veteran's Administration and Social Security Administration (SSA) and asserting that Zaratkiewicz filed a fraudulent claim for disability benefits;

- contacting an American Legion Service Officer who assisted Zaratkiewicz in filing a disability claim with the SSA and claiming that Zaratkiewicz filed a fraudulent claim;

- contacting the American Legion Service Officer's commander and complaining about the officer's assistance of Zaratkiewicz;

- contacting a prospective employer of Zaratkiewicz, volunteering information, and threatening the prospective employer; and

- contacting a military hospital and accusing Zaratkiewicz of conspiring to defraud the government.

The evidence relied upon by the trial court reflects that Guthrie committed "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose."[14] Guthrie directed her conduct at Zaratkiewicz or others assisting him. The trial court focused on Guthrie's conduct. Further, the record includes sufficient evidence that Guthrie's course of conduct served no legitimate or lawful purpose. The record also supports that Guthrie's course of conduct would cause a reasonable person to suffer substantial emotional distress and in fact caused Zaratkiewicz substantial emotional distress. Her conduct impeded Zaratkiewicz's ability to obtain gainful employment in order to satisfy his child support obligations.

Guthrie's many arguments disputing the evidence presented by Zaratkiewicz ultimately turn on credibility determinations. But we do not second guess the trial court's credibility determinations.[15] For example, Laura Standley's declaration and the copies of e-mails between Guthrie and Highline Community College provided sufficient

---

[14] RCW 10.14.020(2).

[15] In re Marriage of Wilson, 165 Wn. App. 333, 340, 267 P.3d 485 (2011).

evidence to allow the trial court to determine that she purported to act in an official capacity to obtain information on behalf of the court to confirm that Zaratkiewicz was using forged academic transcripts. Although she offers an alternative interpretation, the trial court was not compelled to accept her version as credible. Similarly, Standley's declaration describes Guthrie's attempts to convince Standley that she should not assist Zaratkiewicz in pursuing a disability claim Guthrie contends is fraudulent, and Guthrie's complaints to Standley's commander for that same purpose. But the trial court was not compelled to agree with Guthrie that the disability claim was fraudulent and that Guthrie's conduct was motivated by her interests in preventing a fraud. It was within the trial court's discretion to find that Guthrie was attempting to harass or intimidate those assisting Zaratkiewicz. Such conduct is not constitutionally protected and is adequate to support a protective order.

Guthrie also argues that her contacts with the Veteran's Administration and the Washington National Guard all occurred while she was still married to Zaratkiewicz. But she provides no authority that the trial court cannot consider such prior conduct in evaluating whether there is a course of conduct that amounts to unlawful harassment.

The trial court was not compelled to accept Guthrie's versions of events. The declarations and documents submitted by Zaratkiewicz, if believed by the trial court, provide substantial evidence of a course of conduct supporting a protective order. To the extent that Guthrie contends prior court orders authorized the very conduct that was the basis for the October 2 protection order, she misreads those prior orders. None of them authorize abusive speech or harassment of those attempting to assist Zaratkiewicz. It was also within the trial court's discretion to determine that Guthrie's

6

conduct exceeded the prior authorization to contact prospective employers in order to determine if the employer contemplated hiring Zaratkiewicz.

Therefore, we conclude substantial evidence supports the October 2 protection order.

Guthrie also contends the trial court erred by failing to enter written findings in its protection order specifying Guthrie's course of conduct, the person at whom her conduct was directed, and the emotional distress suffered by Zaratkiewicz. Guthrie contends written findings are required by State v. Noah.[16] While the trial court entered written findings in Noah, neither Noah nor the antiharassment statute mandate the entry of written findings. Noah holds that the appellate court's inquiry is limited to "whether there was a factual basis for the antiharassment order."[17] And generally, in the absence of written findings, an appellate court may look to an oral opinion to determine the basis for the trial court's resolution of an issue.[18]

The trial court's oral opinion reflects that the court considered and found all statutory elements. Judge Parisien specifically referred to Standley's declaration, the e-mail correspondence from Zaratkiewicz's community college, and Zaratkiewicz's petition for an antiharassment protection order. Guthrie does not provide persuasive authority that written findings are required. The trial court's oral findings adequately support the trial court's conclusion that the statutory elements of unlawful harassment are satisfied.

---

[16] 103 Wn. App. 29, 9 P.3d 858 (2000).

[17] Id. at 39.

[18] In re Marriage of Griffin, 114 Wn.2d 772, 777, 791 P.2d 519 (1990).

*Prior Restraint on Speech Rights and Right to Petition*

Guthrie contends the trial court's protection order constitutes an unconstitutional prior restraint on her federal First Amendment rights to free speech and to petition the government for a redress of grievances.[19] We agree, in part.

Guthrie did not raise this argument below. We generally "refuse to review any claim of error which was not raised in the trial court."[20] But "[i]ssues involving the exercise of free speech in the civil arena can be raised for the first time on appeal."[21]

The protection order here states:

> The Respondent shall refrain and immediately desist from communicating in any way—including by telephone, e-mail, letter, texting with *any prospective employers* of the Petitioner. The Respondent is further prohibited from communicating in any way with *any branches of the military or Veterans Administration* regarding the Petitioner. Respondent shall not provide medical information or academic transcripts pertaining to the Petitioner to *any entity or individual*.[22]

"The First Amendment of the United States Constitution prohibits the government from interfering with a person's 'freedom of speech' and 'right . . . to petition the Government for a redress of grievances.'"[23] "Although the right to free speech and the

---

[19] Guthrie refers to both the federal and state constitutions, but acknowledges "a separate state constitutional analysis" under State v. Gunwall is not necessary because "the Washington Constitution provides, at minimum, no less protection of speech as the First Amendment, and that level as applied in state decisions is ample to protect Rustina's rights." Appellant's Br. at 57. Therefore, we do not separately address the state constitutional provisions.

[20] RAP 2.5(a).

[21] In re Dependency of T.L.G., 139 Wn. App. 1, 19, 156 P.3d 222 (2007).

[22] CP at 36 (emphasis added).

[23] In re Marriage of Meredith, 148 Wn. App. 887, 896, 201 P.3d 1056 (2009) (alteration in original).

right to petition are separate guarantees, they are related and generally subject to the same constitutional analysis."[24]

"'[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.'"[25] The right of free speech is not absolute, and the State may punish its abuse.[26] Washington courts have the authority to prohibit dissemination of abusive speech, including defamation and harassment.[27]

Prior restraints on speech are disfavored because such restraints burden the exercise of the right to speak before any abuse of the right is shown.[28] "Prior restraints are 'official restrictions imposed upon speech or other forms of expression in advance of actual publication.'"[29] "'Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints.'"[30] "Prior restraints are presumptively unconstitutional unless they deal with non-protected speech."[31] But post-publication restrictions "simply prohibit further

---

[24] Id.

[25] Bering v. SHARE, 106 Wn.2d 212, 222, 721 P.2d 918 (1986) (quoting Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647, 69 L. Ed. 2d 298, 101 S. Ct. 2559 (1981)).

[26] Id. at 226.

[27] Id. at 244; Rhinehart v. Seattle Times Co., 98 Wn.2d 226, 237, 654 P.2d 673 (1982), affirmed, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984).

[28] Seattle v. Bittner, 81 Wn.2d 747, 756, 505 P.2d 126 (1973).

[29] Noah, 103 Wn. App. at 41 (quoting State v. Coe, 101 Wn.2d 364, 372, 679 P.2d 353 (1984)) (internal quotation marks omitted).

[30] In re Marriage of Suggs, 152 Wn.2d 74, 93 P.3d 161 (2004) (quoting Alexander v. United States, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993)).

[31] Noah, 103 Wn. App. at 41.

9

exercise of the right after a showing of abuse."[32]  Subsequent punishment of abusive speech is not a prior restraint.[33]

The trial court here properly focused on Guthrie's conduct and not the content of her speech.  In the abstract, the right to free speech or to petition the government would generally extend to a legitimate challenge of an application for government benefits. But the right to free speech and to petition do not extend to abusive speech or a petition raising a false claim of fraud as a device to harass the applicant.[34]  None of the cases cited by Guthrie provide constitutional protection for her conduct as found by the trial court:

- contacting Zaratkiewicz's former community college in a purported official capacity and asserting that his transcript was fraudulent;

- contacting the Veteran's Administration and Social Security Administration (SSA) and asserting that Zaratkiewicz filed a fraudulent claim for disability benefits;

- contacting an American Legion Service Officer who assisted Zaratkiewicz in filing a disability claim with the SSA and claiming that it was a fraudulent claim;

---

[32] Bering, 106 Wn.2d at 243.

[33] Id. (emphasizing "the important distinction between prior restraint and subsequent punishment"); Bradburn v. N. Cent. Reg'l Library Dist., 168 Wn.2d 789, 802, 231 P.3d 166 (2010) ("A prior restraint seeks to prohibit future speech rather than to punish speech that has occurred.").

[34] U.S. v. Alvarez, ___ U.S. ___, 132 S. Ct. 2537, 2547, 183 L. Ed. 2d 574 (2012) ("Where false claims are made to effect a fraud . . ., it is well established that the Government may restrict speech without affronting the First Amendment."); Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 771, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976) (fraudulent speech generally falls outside the protections of the First Amendment); Meredith, 148 Wn. App. at 899 ("As with the right to speak freely, the right to petition does not protect harassing or libelous speech."); see also McDonald v. Smith, 472 U.S. 479, 483-85, 105 S. Ct. 2787, 86 L. Ed. 2d 384 (1985) (petition clause does not provide absolute immunity from damages for libel and defamation); Richmond v. Thompson, 130 Wn.2d 368, 378, 922 P.2d 1343 (1996) (same).

- contacting the American Legion Service Officer's commander and complaining about the officer's assistance of Zaratkiewicz;

- contacting a prospective employer of Zaratkiewicz, volunteering information, and threatening the prospective employer; and

- contacting a military hospital and accusing Zaratkiewicz of conspiring to defraud the government.

The trial court focused upon Guthrie's conduct, but the broad scope of the protection order does not prohibit only unprotected speech.

In re Marriage of Meredith[35] and In re Marriage of Suggs[36] are instructive. In Meredith, the trial court found that Anthony Meredith committed domestic violence and represented a credible threat to the physical safety of his former wife, Jazmin Muriel.[37] The trial court then restrained Meredith from

> contacting *any* agency regarding Ms. Muriel's immigration status, including but not limited to the Department of Homeland Security (Citizenship and Immigration Services, Immigration and Customs Enforcement or Customs and Border Protection), the Executive Office of Immigration Review (the immigration court system), or the Department of State. Any contact that Mr. Meredith believes to be necessary must first be approved by this court through the undersigned judge/department.[38]

On review, Division Two of this court concluded the trial court's order constituted an unconstitutional prior restraint on Meredith's federal right to free speech.[39] Although the trial court's order properly prohibited Meredith from making harassing and libelous claims against Muriel, it also prohibited him from "contacting any agency regarding Ms. Muriel's immigration status" without prior court approval, "without regard to whether the

---

[35] 148 Wn. App. 887, 201 P.3d 1056 (2009).

[36] 152 Wn.2d 74, 93 P.3d 161 (2004).

[37] Meredith, 148 Wn. App. at 894-95.

[38] Id. at 895.

[39] Id. at 896.

contact involves protected or unprotected speech."[40] The court concluded the protection order was not "specifically crafted to prohibit only unprotected speech" and therefore, was an unconstitutional prior restraint.[41]

In Suggs, the trial court found that Suggs harassed her former husband and permanently restrained her from "knowingly and willfully making invalid and unsubstantiated allegations or complaints to third parties which are designed for the purpose of annoying, harassing, vexing, or otherwise harming [her former husband] and for no lawful purpose."[42] Our Supreme Court in Suggs determined the order prohibited some speech that might be unprotected speech, but the order also prohibited protected speech.[43] Because the order was drafted too broadly, it chilled Suggs from making constitutionally protected communications.[44] The court vacated the order as an "unconstitutional prior restraint on speech."[45]

As in Meredith and Suggs, the protection order here prohibits Guthrie from making harassing and libelous claims against Zaratkiewicz. But the order also prohibits Guthrie from (1) "communicating in any way . . . with *any prospective employer* of [Zaratkiewicz]," (2) communicating in any way with *any branches of* the military or Veterans Administration regarding [Zaratkiewicz]," and (3) providing Zaratkiewicz's "medical information or academic transcripts . . . to *any entity or individual*."[46] The order does not

---

[40] Id. at 898.

[41] Id.

[42] Suggs, 152 Wn.2d at 78-79.

[43] Id. at 83-84.

[44] Id. at 84.

[45] Id.

[46] CP at 36 (emphasis added).

distinguish between protected or unprotected speech but prohibits all such speech to the aforementioned individuals and entities. As in Suggs, the order here is drafted too broadly, chilling Guthrie from engaging in speech that the First Amendment protects.

The trial court here issued the protection order "on a very specific issue,"[47] and attempted to focus on Guthrie's conduct, as opposed to the content of her speech. But the protection order's broad language "is not specifically crafted to prohibit only unprotected speech."[48] For example, if she can someday demonstrate entitlement to a government benefit available to her as the ex-spouse who is owed child support, Guthrie may have a legitimate basis to contact the Veteran's Administration or the Army National Guard regarding Zaratkiewicz.[49] Although our Supreme Court "has repeatedly emphasized that individuals have an important privacy interest in medical information,"[50] there could arise a legitimate need by Guthrie to reveal family health history to their daughter's physician, including medical information about Zaratkiewicz. And if Zaratkiewicz's unemployment continues, there may be a point when she will be entitled to conduct discovery with past prospective employers in support of a theory that he has not made genuine efforts to obtain employment.

Therefore, we conclude the October 2, 2013 protection order extends to protected speech and is an unconstitutional prior restraint.

---

[47] RP (Oct. 2, 2013) at 54.

[48] Meredith, 148 Wn. App. at 898.

[49] The materials provided by Guthrie do not demonstrate such an existing right.

[50] Matter of Juveniles A, B, C, D, E, 121 Wn.2d 80, 106, 847 P.2d 455 (1993) (Utter, J., concurring in part, dissenting in part); see also United States v. Comprehensive Drug Testing, Inc., 513 F.3d 1085, 1137 (9th Cir. 2008) (noting that the Health Insurance Portability and Accountability Act of 1996 emphasizes the "importance

*Constitutional Right to Counsel and Access to Courts*

Guthrie contends the trial court's protection order and contempt order must be reversed because she appeared pro se at both hearings and the trial court failed to advise her she had a right to counsel. When a contempt proceeding may result in incarceration, "the person accused of contempt must be provided with state-paid counsel if he or she is unable to afford private representation."[51] The threat of imprisonment must be immediate to trigger the right to counsel.[52] In Tetro, our Supreme Court reversed a contempt judgment against a father who failed to pay his child support obligation because the indigent contemnor was not advised of his right to state-paid counsel.

Guthrie does not provide any authority that she had a right to counsel for the protection order hearing on October 2, 2013. She does not demonstrate a threat that her incarceration was at issue at that hearing. As for the contempt hearing, we reverse the contempt order and need not reach any arguments regarding the procedure at that hearing. Further, Guthrie's access to courts argument is tied to her right to counsel argument and fails for the same reasons. Therefore, any suggestion that we must reverse the protection order for the trial court's failure to appoint counsel or abridgement of her right of access to courts lacks merit.

*Debra Bright and Laura Standley*

Guthrie contends attorney Debra Bright violated her duty of candor and engaged in conduct prejudicial to the administration of justice. But Bright was appointed only to

---

of maintaining the privacy of medical information") (citing 65 Fed. Reg. 82462, 82464 (Dec. 28, 2000)).

[51] Tetro v. Tetro, 86 Wn.2d 252, 255, 544 P.2d 17 (1975).

[52] Id. at 255 n.1.

represent Zaratkiewicz in the contempt proceedings for unpaid child support. Guthrie does not establish that Bright played any role in the orders that she appeals. Guthrie attempts to impute conduct by Veterans Service Organization Service Officer Laura Standley to Bright. But she fails to demonstrate any support in the record for her claim.

Guthrie's suggestion that Standley engaged in the unauthorized practice of law or otherwise acted improperly is not supported by the record or any compelling legal authority.[53]

*Judge Parisien Recusal*

Guthrie contends Judge Suzanne Parisien should have recused herself from presiding over Zaratkiewicz's petition for a protection order. But Guthrie does not provide an adequate record. She does not identify any affidavit of prejudice filed in this lawsuit, let alone any affidavit filed before a discretionary ruling by Judge Parisien in this lawsuit.[54] Guthrie's arguments of actual bias are not supported by the record or any compelling legal authority.[55] Therefore, her arguments fail.[56]

Lastly, Guthrie assigns error to the trial court's issuance of the September 20, 2013 temporary antiharassment protection order. But that temporary protection has

---

[53] Further, the Washington State Practice of Law Board dismissed Guthrie's complaint against Standley for the unauthorized practice of law.

[54] RCW 4.12.050.

[55] RAP 10.3(a)(5), (6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[56] Pro se litigants are held to the same standard as attorneys, requiring compliance with all procedural rules. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

expired, and Guthrie provides no legal authority that the September 30 temporary order implicates the October 2 protective order. Therefore, any issue is moot.[57]

CONCLUSION

Substantial evidence supports the trial court's entry of a protection order. But the relief ordered in the October 2, 2013 protection order is not crafted to prohibit only unprotected speech. Because it appears that the October 2, 2013 protection order has been extended to October 1, 2015, we remand for further proceedings consistent with this opinion regarding the protection order. We reverse the December 13, 2013 contempt order that was based upon the invalid October 2, 2013 protection order.

Cox, J.

WE CONCUR:

Trickey, J

---

[57] See State ex rel. Carroll v. Simmons, 61 Wn.2d 146, 149, 377 P.2d 421 (1962); Ferry County Title & Escrow Co. v. Fogle's Garage, Inc., 4 Wn. App. 874, 880-81, 484 P.2d 458 (1971).