IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AMOREA ROCHA, | No. 86631-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| HAMAL JACOB STRAND, | UNPUBLISHED OPINION |
| Appellant. | |

CHUNG, J. — This is Hamal Strand's second appeal from the superior court's entry of an antiharassment protection order restraining Strand and its denial of Strand's motion for an order restricting abusive litigation by the protected party, Amorea Rocha. Strand also challenges a temporary weapons surrender order entered by the district court before the underlying matter was transferred to superior court.

The weapons surrender order is not properly before us, and Strand fails to show that the superior court abused its discretion in entering the antiharassment protection order. However, in denying Strand's abusive litigation motion, the superior court made the same finding that we held was deficient in Strand's first appeal. Accordingly, we once again vacate the superior court's decision denying Strand's motion and remand to the superior court to make necessary findings and conclusions and enter an appropriate order. Otherwise, we affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

On February 3, 2020, Rocha petitioned the Kitsap County District Court for an antiharassment protection order restraining Strand. Rocha alleged that Strand had stolen a copy of her son's birth certificate while an earlier protection order was in place and had been "harassing [and] tracking [her] new phone number" and "bullying" her online and "through FBI, ATF, recurring unfounded court proceedings, and stalking [her] family." Attached to Rocha's petition were copies of text and e-mail communications from Strand as well as a copy of a "cease and desist" letter from Rocha to Strand dated January 23, 2020. In the letter, Rocha referred to "300 harassing messages" Strand sent to Rocha's cell phone in October 2018, in which he referred to her family as "child predators" and claimed "kidnapping and parental alienation." Rocha wrote that Strand's "def[]amation of character both libel and slander . . . , harassing, intimidating, use of [her child's] name and or personal information . . . , and malicious prosecution actions against [her]" had "become unbearable" and demanded that Strand cease his activities.

That same day, the district court set a hearing for February 13, 2020, and issued a temporary protection order and a temporary order directing Strand to surrender any weapons. The court later continued the hearing and reissued the temporary protection order, but it declined to reissue the weapons surrender order.

On February 25, 2020, Strand filed a declaration in response to Rocha's petition. He attested among other things that he and Rocha lived together off and on for about eight months in 2000 and 2001. He attested that after their

2

relationship ended, Rocha gave birth to a boy, Rage,[1] who she later acknowledged was Strand's son. Strand claimed that Rocha withheld Rage from Strand and told Strand that his parental rights had been terminated and that he believed Rocha. Strand moved overseas and got married, then moved back to the United States in 2017 after his marriage ended. He declared that after he returned, he tried to reach out to Rocha and Rage, who was then 17 years old, and Rocha responded by accusing Strand of abandoning Rage. Strand declared that he located Rocha's address and sent Rage a postcard, and Rocha responded by filing a petition for an antiharassment protection order, which was granted in October 2018. Strand attested that he later filed his own petition for a protection order against Rocha in San Juan County, that Rocha then filed a small claims action against Strand in San Juan County, and that Strand also initiated a civil suit against Rocha in 2019, which remained pending.

Strand denied stealing Rage's birth certificate as Rocha had alleged, stating instead that he "truthfully submitted a request for his birth certificate to a web site called 'vitalcheck.com', a private service that arranges to have vital documents retrieved from government agencies." He also argued that none of the exhibits attached to Rocha's petition supported her allegations of harassment.

On February 27, 2020, the district court held a hearing on Rocha's petition. Rocha testified that although she and her husband, Matthew White, had previously told Strand to e-mail them if he had any kind of communication, on

---

[1] Rage is now an adult. Because Rage's last name is also Strand, we refer to him by his first name for clarity.

January 12, 2020, Strand texted White asking, "Do you have any plans for Valentine's day?" in reference to an upcoming court hearing, and on January 25, 2020, Strand texted Rocha and accused her of stealing his birth certificate. When the court inquired about the 300 messages referenced in the letter attached to Rocha's petition, Rocha testified that during that time frame, Strand and his girlfriend "were literally trying to get ahold of pretty much anybody that was in this house," and "just making it very uncomfortable." She asserted that there was "no need for communication" between her and Strand, that Strand "does not know the means of correct communication towards people," and that "it's emotionally distressing that we have to go through this at this point."

Strand, for his part, testified with regard to the 300 messages that "[a]round that time [he] was going through a very difficult time" and he "sent a bunch of text messages trying to find [his] son." The court later commented, about the "Valentine's day" message, that "there's nothing legitimate about that," and when Strand pointed out that it was sent to White and not Rocha, the court stated, "Well, when you're sending something to Mr. White, you're kind of sending it to Ms. Rocha, too; aren't . . . you?" The district court granted Rocha's petition and entered an antiharassment order with an expiration date of February 27, 2022 (first protection order). On March 25, 2020, Strand sent White a lengthy text message, and White reported the matter to the Kitsap County Sheriff's Office.

Meanwhile, Strand appealed the first protection order to the Kitsap County Superior Court, and he argued that the district court lacked subject matter

4

jurisdiction to enter the first protection order because the San Juan County Superior Court had previously exercised jurisdiction over another proceeding involving himself and Rocha. The superior court agreed, and on October 23, 2020, it remanded to the district court to vacate the first protection order, transfer the matter to superior court, and reissue a temporary protection order pending a hearing in superior court.[2] The district court did so on July 2, 2021. A few days later, Strand filed a motion alleging that Rocha had engaged in abusive litigation and seeking appropriate relief under chapter 26.51 RCW.

On July 15, 2021, both Rocha's petition and Strand's abusive litigation motion were heard before a superior court commissioner.[3] The commissioner did not take any additional evidence, but he stated that he had read "all the materials" and the transcripts. The commissioner denied Strand's motion, granted Rocha's petition, and entered an antiharassment protection order restraining Strand until July 15, 2024 (second protection order).

Strand appealed the second protection order to Division Two of this court. In an unpublished opinion issued on November 1, 2022, this court held, "[W]e are unable to review the merits of the [second protection] order . . . because the superior court failed to make the required findings of fact regarding the issuance

---

[2] Under former RCW 10.14.150(1) (2019), "[t]he district courts shall have original jurisdiction and cognizance of any civil [antiharassment protection order] actions and proceedings . . . , except the district court shall transfer such actions and proceedings to the superior court when it is shown that . . . a superior court has exercised or is exercising jurisdiction over a proceeding involving the parties." See also former RCW 10.14.150(3) (2019) ("The civil jurisdiction of district . . . courts under this chapter is limited to the issuance and enforcement of temporary orders for protection in cases that require transfer to superior court.").

[3] Strand represents that he presented proposed findings to the commissioner at the July 15, 2021 hearing and has moved for permission to append those proposed findings, which are not in the record, to his brief. The motion is hereby denied.

of the protection order and the denial of the order restricting abusive litigation."
Rocha v. Strand, No. 56175-1-II, slip op. at 1 (Wash. Ct. App. Nov. 1, 2022)
(unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2056175-1-
II%20Unpublished%20Opinion.pdf.[4] Accordingly, we "vacate[d] the protection
order and the denial of the motion for an order restricting abusive litigation and
remand[ed] with instructions to the superior court to make and enter necessary
findings of fact and conclusions of law to be followed by the entry of an
appropriate order based on those findings and conclusions." Id. at 2.

On remand, the superior court held another hearing on Rocha's petition
and Strand's motion. The court adopted Rocha's proposed findings and
conclusions, stating that they "are consistent with what this Court found to be the
case back in the . . . July 15th, 2021, hearing." Those findings and conclusions
state, in relevant part:

> 1.3 In October-November of 2018, Mr. Strand sent Ms. Rocha
> approximately 300 text messages. The text messages make
> claims of kidnapping and parental alienation.
> 1.4 On or about April 19, 2019, Mr. Strand procured a copy of Ms.
> Rocha's son's birth certificate by posing as his father, although
> no paternity has ever been established.
> 1.5 On January 23, 2020, Ms. Rocha sent Mr. Strand a "Cease
> and Desist" letter demanding that all communication between
> them cease.
> 1.6 On February 27, 2020, seven days after the February 20,
> 2020 hearing, Mr. Strand sent Matthew White, Ms. Rocha's
> boyfriend/partner, a lengthy text message in an attempt to
> engage in third party contact with Ms. Rocha. The matter was
> referred to the Kitsap County Sheriff, . . . and although no
> arrest was made, [a deputy] recommended Mr. Strand cease
> all communication with anyone associated with Ms. Rocha.
>
>    . . . .

---

[4] We cite and discuss this unpublished opinion under GR 14.1(c) because doing so is
necessary for a reasoned decision.

6

2.2    The Court concludes by a preponderance of the evidence that Mr. Strand engaged in a knowing and willful course of conduct directed at Ms. Rocha, which seriously alarmed, annoyed, or harassed her and was detrimental to her person and served no legitimate or lawful purpose. The use of a telephone to repeatedly text someone with the intent to harass or intimidate a person is a form of harassment. RCW 9.61.230.

2.3    The Court concludes by a preponderance of the evidence that the harassing conduct constituted a course of conduct that would cause a reasonable person to suffer substantial emotional distress and would actually cause substantial emotional stress to Ms. Rocha.

2.4    The Court does not find Ms. Rocha has engaged in abusive litigation.

The superior court then entered another antiharassment protection order with the same expiration date as its earlier order, i.e., July 15, 2024 (third protection order). Strand appeals.[5]

ANALYSIS

I.     <u>Denial of Abusive Litigation Motion</u>

Strand argues that the superior court erred by again failing to enter specific findings in support of its denial of his abusive litigation motion. We agree.

As we pointed out in Strand's first appeal, CR 52(a)(2)(C) provides that findings and conclusions are required "[i]n connection with any other decision where findings and conclusions are specifically required by statute." <u>Rocha</u>, slip op. at 11. As we also pointed out, chapter 26.51 RCW, which governs abusive litigation, specifically requires findings and conclusions: "If the court finds by a preponderance of the evidence that the litigation does not constitute abusive litigation, *the court shall enter written findings* and the litigation shall proceed."

---

[5] Strand initially sought direct review in the Washington Supreme Court, which transferred the matter to this court.

RCW 26.51.060(3) (emphasis added), quoted in Rocha, slip op. at 11. Yet on remand, the superior court determined only that it "does not find Ms. Rocha has engaged in abusive litigation." This is in all material respects the same determination that was before us in Strand's first appeal to this court, see id., and as we explained then,

> [T]his sentence is an interpretation and application of legal principles to the facts of the case, this is not a factual finding, but a legal conclusion. The superior court made no factual findings as to why Strand was not entitled to relief. This failure is in violation of CR 52(a)(2)(C) and RCW 26.51.060(3).

Id. "Accordingly," we explained, "we cannot engage in meaningful appellate review of the superior court's denial of [Strand]'s request to restrict abusive litigation because it is not clear what factual bases the superior court relied on to deny [Strand]'s request." Id.

It remains unclear what factual bases the superior court relied on to deny Strand's request for an abusive litigation order. Cf. RCW 26.51.020 (defining "abusive litigation" and related terms). Accordingly, we cannot engage in meaningful appellate review and must again vacate the superior court's decision to deny Strand's abusive litigation motion and remand for the court to make necessary findings and conclusions and enter an appropriate order.[6]

II.      Entry of Third Protection Order

Strand next argues that the superior court erred by entering the third protection order. We disagree.

---

[6] Because we vacate and remand on this basis, we need not reach Strand's additional arguments that the superior court's order denying his abusive litigation motion should be vacated.

A. Standard of Review and Legal Standards

A trial court may enter an antiharassment protection order if it finds by a preponderance of the evidence that "the petitioner has been subjected to unlawful harassment by the respondent." RCW 7.105.225(1)(f).[7] "Unlawful harassment" means, as relevant here, "[a] knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful purpose." RCW 7.105.010(36)(a). "The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." Id. "Course of conduct" means "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." RCW 7.105.010(6)(a). It "includes any form of communication, contact, or conduct, including the sending of an electronic communication," but it does not include constitutionally protected activity. Id.

We review a trial court's decision whether to grant an antiharassment protection order for abuse of discretion. See Trummel v. Mitchell, 156 Wn.2d 653, 669-70, 131 P.3d 305 (2006) (reviewing modifications to an antiharassment order for abuse of discretion). The trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds, including when it bases a decision on an erroneous view of the law. Wash. State Phys. Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

_____

[7] The parties agree that chapter 7.105 RCW, which became effective in July 2022, governed Rocha's petition.

When an appellant challenges the trial court's findings and conclusions, "we limit our review to determining whether substantial evidence supports the findings and, if so, whether those findings support the conclusions of law." Graser v. Olsen, 28 Wn. App. 2d 933, 941, 542 P.3d 1013 (2023). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the finding is true. Id. We defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony, id. at 941-42, and we view the evidence and all reasonable inferences in the light most favorable to the party who prevailed below. Garza v. Perry, 25 Wn. App. 2d 433, 453, 523 P.3d 822 (2023).

      B.     Analysis

Strand contends that the superior court erred by determining that he engaged in unlawful harassment. He makes a number of arguments in support of reversal, but none are persuasive for the reasons discussed below.

Strand first argues that Rocha's petition was a response to Strand's litigation against her and, thus, the superior court erred because it violated the First Amendment by basing the third protection order on Strand's petitioning the government for redress. While Rocha's counsel argued below that Strand was litigious, the court's findings make no mention thereof. Strand does not show that the superior court abused its discretion by relying on Strand's litigation activities. Cf. Trummel, 156 Wn.2d at 666-67 (although certain harassment victims complained about content of newsletters that restrained party forced onto them, antiharassment protection order was not based on constitutionally protected

10

speech where the trial court's focus was the restrained party's behavior and not the message in his newsletters).

Next, Strand challenges the superior court's finding that Strand sent Rocha approximately 300 messages in October-November 2018. Strand asserts that substantial evidence does not support the finding.[8] However, as Strand himself acknowledges, the cease-and-desist letter attached to Rocha's petition referred to 300 messages Strand sent to Rocha's phone in October 2018. Attached to her petition were a handful of text messages from Strand, including two from the morning of November 26, 2018, stating, "You are fake news" and "Your entire life is a lie. Your entire life is a lie." Additionally, the record reviewed by the superior court contained a transcript of Rocha's testimony under oath in a San Juan County proceeding, in which she said that Strand "brought over almost 300 messages sent to me, sent via messages or email." The record from the February 27, 2020, district court hearing, which the superior court also reviewed, showed that when questioned about the 300 messages, Strand did not deny sending them, but merely explained that he "was going through a very difficult time." While Rocha did not produce all 300 messages and Strand himself provided evidence of only 32 text messages, we do not reweigh the competing evidence on appeal. See Bale v. Allison, 173 Wn. App. 435, 458, 294 P.3d 789 (2013) ("We do not reweigh or rebalance competing testimony and inferences

---

[8] He also asserts that "[t]he issue of text messages in 2018 is barred by collateral estoppel," but provides no argument or authority in support of that assertion, so it is unavailing. Instead, Strand refers to his trial court briefs, but "trial court briefs cannot be incorporated into appellate briefs by reference." Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

even if we may have resolved the factual dispute differently.").The foregoing evidence, viewed in the light most favorable to Rocha, provides substantial evidence to support the superior court's finding that Strand sent Rocha 300 messages in October-November 2018.

Strand next argues that the superior court's finding that Strand "procured a copy of [Rage's] birth certificate by posing as his father" does not support its conclusion that Strand engaged in unlawful harassment because this conduct was not "directed at" Rocha as required to constitute unlawful harassment under RCW 7.105.010(36)(a). But this was not the only evidence supporting the court's conclusion. The record included evidence that Strand sent 300 messages to Rocha and, even though Rocha had sent him a cease-and-desist letter in January 2020, following the February 27, 2020 hearing in district court, Strand sent White a lengthy text message.[9] While Strand asserts that his text message to White was not directed at Rocha and points out that there was no order preventing him from contacting White, he cites no authority for the proposition that an antiharassment protection order requires contact that violates an existing protection order. And although antiharassment protection orders are "geared to protect those victims to whom objectionable behavior is directed" and not those who "just happened to be in the company" of a victim, Burchell v. Thibault, 74 Wn. App. 517, 522, 874 P.2d 196 (1994), "courts have broad powers to address

---

[9] Strand correctly points out that the trial court's finding erroneously states that the district court hearing took place on February 20, 2020, and that Strand sent the text message to White on February 27, 2020, when in fact the hearing took place on February 27, 2020, and Strand sent the message to White on March 25, 2020. This discrepancy is immaterial to our analysis and does not warrant reversal.

harassing conduct," including the power to protect a group of people when the entire group is threatened. Trummel, 156 Wn.2d at 664. In this regard, the superior court's finding that Strand texted White after the district court hearing is notable: During that hearing, Rocha testified that she and White had previously told Strand to e-mail them if he had any communication, and the district court warned Strand that contact with White could be considered contact with Rocha. Additionally, Rocha stated, in reference to the impact of Strand's behavior on her family, that it was "emotionally distressing that we have to go through this." Under the circumstances, Strand does not show that the superior court abused its discretion by considering Strand's subsequent text message to White as part of a course of conduct directed at Rocha.

Strand also challenges the superior court's finding that his at-issue conduct "would actually cause substantial emotional stress to Ms. Rocha"[10] because the word "would" means that its finding is conditional and based on an "imagined situation." To be sure, the superior court's finding would have been clearer had it simply stated that Strand's conduct "actually caused" substantial emotional distress to Rocha. Nevertheless, because the finding does not contain any condition or contingency, we are unpersuaded that the superior court used the word "would" in the conditional sense, rather than as the past tense of "will" or to refer to something that regularly occurred in the past. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2637-38 (1993) ("would" is the past tense of "will"

---

[10] Although the superior court labeled this a conclusion of law, it is a finding of fact. RCW 7.105.225(1); cf. State v. Whittaker, 192 Wn. App. 395, 407, 367 P.3d 1092 (2016) (reviewing for substantial evidence the jury's finding that the defendant caused the victim substantial emotional distress under former RCW 10.14.020 (2011), the predecessor to RCW 7.105.010(36)).

13

and may also express "custom or habitual action," e.g., "we [would] meet every morning").

Moreover, the finding is supported by substantial evidence. While Strand argues "the record does not contain how Rocha felt," in her cease-and-desist letter, Rocha described Strand's conduct as "unbearable." Rocha testified regarding Strand's manner of communicating with her family that "it's emotionally distressing that we have to go through this." Additionally, Rocha asserted that seeking the order was "a safety measure for me, my husband, and my kids." The record provides substantial evidence to support the superior court's finding that his conduct actually caused Rocha substantial emotional distress. Cf. State v. Askham, 120 Wn. App. 872, 883-84, 86 P.3d 1224 (2004) (testimony that victim "felt threatened" by e-mails sufficient to support finding that e-mails caused substantial emotional distress).

Strand next challenges the superior court's conclusion that "[t]he use of a telephone to repeatedly text someone with the intent to harass or intimidate a person is a form of harassment. RCW 9.61.230." He points out that the cited statute is part of Washington's criminal code, and he asserts that the superior court's conclusion violated RCW 10.58.020, which states, "Every person charged with the commission of a crime shall be presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt."[11] But Strand was not charged with the commission of any crime, and contrary to his suggestion

---

[11] Strand states that he also incorporates by reference additional objections that he raised in his briefing below. But as noted, supra n.8, trial court briefs cannot be incorporated into appellate briefs. Accordingly, we do not consider Strand's additional objections.

otherwise, the superior court did not find that Strand was guilty of harassment pursuant to RCW 9.61.230. While the superior court's conclusion about RCW 9.61.230 was unnecessary given that the court also concluded that Strand committed unlawful harassment as defined in RCW 7.105.010, Strand does not persuade us that this superfluous conclusion requires reversal.

Finally, Strand claims throughout his opening brief that in entering the third protection order, the superior court denied Strand equal protection and infringed his First Amendment right to free speech by "chilling" litigation between Strand and Rocha. He also asserts that "[it] can be reasonably argued that this entire proceeding feels like a punishment," and he contends that "the repeated court errors and the action brought by Rocha" violate the Eighth Amendment's prohibition on excessive fines. But Strand does not engage with the legal standards applicable to these constitutional claims, much less present any authority establishing an entitlement to relief. While he correctly observes that the Eighth Amendment applies to civil sanctions to the extent they serve punitive goals, Austin v. United States, 509 U.S. 602, 609-10, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993), he cites no authority for the proposition that a court proceeding itself can constitute such a sanction, and thus, he fails to show the Eighth Amendment applies.

In sum, substantial evidence supports the court's findings, and the findings support the conclusions of law in the antiharassment order. Therefore, the trial court did not abuse its discretion by entering the third protection order.

III.     Temporary Weapons Surrender Order

Strand also challenges the temporary weapons surrender order entered by the district court on February 3, 2020, the day Rocha filed her petition. But that district court order is not before us in this appeal. See RCW 3.02.020 ("Review of the proceedings in a court of limited jurisdiction *shall be by the superior court*." (emphasis added)); cf. RAP 2.2, 2.3 (providing for review of *superior court* decisions). While Strand relies on RAP 2.4 and 2.5 to argue otherwise, he cites no authority for the proposition that those rules, which relate to the scope of review, override RCW 3.02.020 or allow us to review an order entered by a *different court* than the one that entered the final order under review. We decline to review the temporary weapons surrender order as it is not properly before us.[12]

IV.     Fees on Appeal

As a final matter, Rocha requests an award of fees on appeal under RCW 7.105.310(1)(j). That statute vests the court with discretion to require the respondent in a protection order proceeding "to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees." RCW 7.105.310(1)(j). Rocha does not persuade us that we should exercise our discretion to award fees to her in this case.[13] Accordingly, we deny her request

---

[12] As the temporary weapons surrender order is not properly before us, we need not address Strand's argument that the order is moot.

[13] Rocha argues that a "pattern of frivolous filings in this case" by Strand justifies an award of attorney fees. She avers that while Strand's appeal from the second protection order was pending, the district court sanctioned Strand for filing frivolous motions and that our Supreme Court affirmed those sanctions. She also references various other trial court and Washington Supreme Court proceedings involving herself and Strand. However, Rocha does not provide any record citations for the district court's sanctions order or the other proceedings she references, instead asserting that this court can take judicial notice of these matters. Strand has filed a

for an award of fees on appeal.

We vacate the superior court's decision to deny Strand's abusive litigation motion and remand for the court to make necessary findings and conclusions and enter an appropriate order. Otherwise, we affirm.

Chung, J.

WE CONCUR:

Birk, J.

Mann, J.

---

motion requesting that this court decline to do so. Strand's motion is granted to the extent that we have not considered orders or proceedings for which Rocha has not provided a citation to the record in this appeal. See RAP 10.3(a)(5), (b) (requiring brief of respondent to include a reference to the record for each factual statement); Eugster v. Wash. State Bar Ass'n, 198 Wn. App. 758, 795, 397 P.3d 131 (2017) (" '[W]e cannot, while deciding one case, take judicial notice of records of other independent and separate judicial proceedings even though they are between the same parties.' " (quoting Spokane Rsch. & Def. Fund v. City of Spokane, 155 Wn.2d 89, 98, 117 P.3d 1117 (2005))).