[No. 29891-7-I.   Division One.   May 17, 1993.]

WILLIAM E. McINTOSH, JR., ET AL, *Respondents,* v. JERRY NAFZIGER, ET AL, *Defendants,* BRYCE NAFZIGER, *Appellant.*

*Jonathan S. Solovy* and *Bell, O'Connor, Flegenheimer & Leong,* for appellant.

*Jeffrey A. Beaver* and *Bryan, Schiffrin, McMonagle, Elston & Twiss,* for respondents.

PEKELIS, A.C.J. — Bryce Nafziger appeals from the trial court's award of attorney fees in favor of William E. McIntosh, Jr., and Helen McIntosh.[1] Nafziger contends that the trial court lacked subject matter jurisdiction over the action and that the trial court's award of attorney fees lacked a proper equitable basis. We affirm.

## I

On October 4, 1991, pursuant to RCW 10.14,[2] the McIntoshes, who are African-American, filed a civil antiharass-

---

[1] The other named appellants in this case, Jerry and Janet Nafziger, have filed a motion to withdraw from this appeal. Because their withdrawal does not prejudice the McIntoshes in any way, we grant the motion.

[2] Former RCW 10.14.080 provides that:

"(1) Upon filing a petition for a civil antiharassment protection order under this chapter, the petitioner may obtain an ex parte temporary antiharassment protection order. . . .

"(2) An ex parte temporary antiharassment protection order shall be effective for a fixed period not to exceed fourteen days, but may be reissued. A full hearing, as provided in this chapter, shall be set for not later than fourteen days from the issuance of the temporary order. . . .

"(3) At the hearing, if the court finds by a preponderance of the evidence that unlawful harassment exists, a civil antiharassment protection order shall issue prohibiting such unlawful harassment. An order issued under this chapter shall be effective for not more than one year. . . .

"(4) The court, in granting an ex parte . . . or a civil antiharassment protection order, shall have broad discretion to grant such relief as the court deems proper, including an order:

"(a) Restraining the respondent from making any attempts to contact the petitioner;

"(b) Restraining the respondent from making any attempts to keep the petitioner under surveillance; and

"(c) Requiring the respondent to stay a stated distance from the petitioner's residence and workplace."

ment petition in King County Superior Court seeking an ex parte temporary antiharassment protection order on behalf of themselves and their three minor children, Brian, Blair, and Blake, against their neighbors, Bryce Nafziger, age 19, and his father, Jerry Nafziger, who are Caucasian. In the petition, William McIntosh alleged that Bryce and Jerry Nafziger:

> willfully alarmed, annoyed and harassed my family by making threats of bodily injury and death, in person and by telephone to my son, Blake; by invading our privacy and harassing us with telephone calls to me and others at my home, on several occasions over a period of years . . .[.]

In a supporting affidavit, McIntosh alleged more specifically that

> [d]uring the last three years, Mr. Bryce Nafziger, an eighteen year old man who lives with his parents in Brookside, has verbally harassed, intimidated, and threatened with death my now eight year old son, Blake. The nature and apparent reason for these threats is based upon our family's race and Mr. Nafziger's professed allegiance to the "Skinhead" movement. Mr. Nafziger has thrown rocks at my son, telephoned death threats to my son, and on more than one occasion has chased my son with a car. . . .

In addition to an antiharassment protection order, the McIntoshes' petition asked for costs and attorney fees. The trial court issued a temporary protection order as requested.

On October 10, 1991, Jerry Nafziger, his wife, Janet Nafziger, and Bryce Nafziger filed a motion pursuant to CR 65(b) and RCW 7.40.050, seeking a temporary restraining order against the McIntoshes. This motion was denied.

On November 1, 1991, hearing commenced on the McIntoshes' petition for a civil antiharassment protection order against Bryce and Jerry Nafziger and on the Nafzigers' motion for a restraining order against the McIntoshes pursuant to CR 65. Before any evidence was introduced, the Nafzigers' counsel informed the trial court that Bryce would not contest the entry of a 1-year antiharassment protection order against him, explaining that Bryce no longer lived at his parents' residence in the McIntoshes' neighborhood and

had no intention of returning.[3] In response, the trial court ordered the McIntoshes' counsel to limit testimony to that which was relevant to the conduct of Jerry Nafziger.

At the conclusion of the hearing on November 6, 1991, the trial court stated that it would enter an antiharassment protection order against Bryce Nafziger for a period of 1 year, but would not enter any restraining orders against Jerry Nafziger or the McIntoshes. The trial court also stated that it would retain jurisdiction over the matter for 1 year.

On November 12, 1991, the McIntoshes filed motions to amend their petition to include a racial discrimination claim and a request for attorney fees. Following hearing on November 21, 1991, the trial court denied the motion to amend but awarded the McIntoshes attorney fees against Bryce Nafziger. The trial court determined that Bryce's failure to contest the McIntoshes' petition for an antiharassment protection order "essentially amounted to a default." Thus, the trial court believed it would be inappropriate to allow the McIntoshes to amend the petition and hence broaden the scope of liability. However, the trial court did award attorney fees against Bryce, determining that his malicious conduct provided a sufficient equitable basis for the award.

On December 12, 1991, the trial court entered an antiharassment protection order and an award of costs and attorney fees against Bryce. The trial court also entered the following written findings of fact and conclusions of law:

### FINDINGS OF FACT

. . . .
3.3 Respondents' position not to contest Petitioners' Petition, the allegations contained therein, and prayer for an Anti-Harassment Order against Bryce Nafziger supports and sustains this Court's finding that Petitioners' factual allegations

---

[3]In their trial brief, the Nafzigers stated that they "vehemently deny all allegations made by McIntosh. Although Nafziger asserts that McIntosh's allegations against Bryce Nafziger are false and unfounded, respondents are not contesting for purposes of this hearing McIntosh's request for a no-contact order against Bryce Nafziger. . . . Respondents [*sic*] position is in no way meant to be construed as an admission or stipulation as to any of the meritless allegations of McIntosh."

are true that *Bryce Nafziger, over a three year period, repeatedly and with malicious racial motivation threatened and harassed Blake McIntosh.*

. . . .
6.2 The petitioners substantially prevailed as to Respondent Bryce Nafziger and *attorneys' fees and costs in preparation for trial of the issues is indivisible between the Respondents and should be awarded against Respondent Bryce Nafziger and in favor of Petitioners in the amount of $10,056.50* which sum is exclusive of attorney fees for trial, together with statutory costs.

### CONCLUSIONS OF LAW

. . . .
5. Good basis exists in law and from the evidence adduced at trial for an award of costs and reasonable attorneys' fees to Petitioners as prevailing party as against Respondent Bryce Nafziger only in this action to enjoin further malicious violations of Petitioners' civil rights based upon race, by Petitioners [*sic*] use of RCW 10.14 *et seq.* as the attorneys' fees and costs incurred prior to trial are indivisible as between the Respondents; judgment shall enter against Respondent Bryce Nafziger only in the amount of $10,056.50 together with statutory costs.

(Italics ours.)

This timely appeal follows.

## II

Nafziger contends for the first time on appeal that the superior court lacked subject matter jurisdiction over the McIntoshes' action.[4] Nafziger bases his contention on RCW 10.14.150, which states that

[t]he *district courts* shall have jurisdiction and cognizance of any civil actions and proceedings brought under this chapter. Superior courts shall have concurrent jurisdiction to receive transfer of antiharassment petitions in cases where a district court judge makes findings of fact and conclusions of law showing that meritorious reasons . . . [exist] for the transfer. . . .[5]

(Italics ours.)

---

[4]It is, of course, well established that the issue of subject matter jurisdiction may be raised for the first time on appeal. *See, e.g., Fowlkes v. International Bhd. of Elec. Workers, Local 76,* 58 Wn. App. 759, 764, 795 P.2d 137, 808 P.2d 1166 (1990), *review denied,* 117 Wn.2d 1019 (1991), *cert. denied,* 112 S. Ct. 1181 (1992).

[5]This provision, which became effective on July 1, 1991, amended former RCW 10.14.150, which *endowed superior courts with jurisdiction over any civil*

However, Const. art. 4, § 6 (amend. 65) invests the superior courts with original and general jurisdiction in all cases and in all proceedings in which jurisdiction is not *exclusively vested by law* in some other court or forum. *Strenge v. Clarke*, 89 Wn.2d 23, 26, 569 P.2d 60 (1977) (citing *Dillenburg v. Maxwell*, 70 Wn.2d 331, 351-52, 413 P.2d 940, 422 P.2d 783 (1966), *cert. denied*, 386 U.S. 998 (1967)). Justice court, *i.e.*, district court, jurisdiction is also provided for in the state constitution. However, the power to determine the extent of justice court jurisdiction is lodged in the Legislature which is authorized to prescribe the jurisdiction of justice courts provided that such jurisdiction does not "trench upon" the jurisdiction of the superior courts. Const. art. 4, § 10 (amend. 65). That limitation has been interpreted to mean that the investing of original jurisdiction in the superior courts does not prevent the Legislature from granting *concurrent* jurisdiction to justice courts in the same class of cases. *Clarke*, 89 Wn.2d at 26 (quoting *Moore v. Perrott*, 2 Wash. 1, 4, 25 P. 906 (1891)).

Nafziger argues that RCW 10.14.150 should be interpreted as requiring civil antiharassment actions to be commenced originally in the district courts and as vesting the superior courts with concurrent jurisdiction only upon a district court's written findings and conclusions showing that meritorious reasons exist to transfer the case to the superior court. Nafziger asserts that, under this interpretation, RCW 10.14.150 does not violate Const. art. 4, § 6 (amend. 65) because it does not restrict the jurisdiction of the superior courts, but merely regulates the procedure by which the superior courts may obtain jurisdiction.

We disagree. Despite Nafziger's assertion to the contrary, it is clear that under his interpretation the superior courts would *lose* original jurisdiction in civil antiharassment actions.[6] This would constitute an impermissible encroach-

___

actions brought under this chapter. *See* former RCW 10.14.150, amended by Laws of 1991, ch. 33, § 2.

[6]This distinguishing factor renders inapposite the cases of *Dillenburg* and *Roon v. King*, 24 Wn.2d 519, 166 P.2d 165 (1946), which Nafziger cites in support

ment upon the superior courts' jurisdiction. Thus, unless it can be construed as vesting jurisdiction *exclusively* in the district courts, RCW 10.14.150 would, under Nafziger's interpretation, violate Const. art. 4, § 6 (amend. 65). As Nafziger himself concedes, however, RCW 10.14.150 does not vest exclusive jurisdiction in the district courts.

"[W]herever possible, it is the duty of this court to construe a statute so as to uphold its constitutionality.' " *World Wide Video, Inc. v. Tukwila*, 117 Wn.2d 382, 392, 816 P.2d 18 (1991) (quoting *State v. Browet, Inc.*, 103 Wn.2d 215, 219, 691 P.2d 571 (1984)), *cert. denied*, 112 S. Ct. 1672 (1992). Therefore, we construe RCW 10.14.150 as providing the district and superior courts with concurrent original jurisdiction, thereby allowing civil antiharassment actions to be brought either in the district or superior courts. Under this construction, the superior courts have concurrent original jurisdiction in civil antiharassment actions, as well as concurrent jurisdiction in cases brought originally in the district court and subsequently transferred to the superior court upon a showing of good cause. As so construed, the statute is not inconsistent with Const. art. 4, § 6 (amend. 65). Hence, the superior court had jurisdiction over the McIntoshes' action.

Affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

COLEMAN and KENNEDY, JJ., concur.

Reconsideration denied July 8, 1993.

---

of his argument. Neither of those decisions divested the superior court of jurisdiction.