IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WASHINGTON STATE UNIVERSITY and the STATE of WASHINGTON, | ) ) ) | No. 31910-5-III (consolidated with |
| Respondents, | ) ) | No. 32001-4-III) |
| v. | ) ) ) | UNPUBLISHED OPINION |
| SANDRA BERNKLOW, and JOHN DOE BERNKLOW and the marital community composed of SANDRA BERNKLOW and JOHN DOE BERNKLOW, | ) ) ) ) ) | |
| Appellants. | ) | |

SIDDOWAY, J. — Washington State University prevailed in a bench trial in this

collection action against Sandra Bernklow. She appeals, assigning error to the trial

court's (1) denial of her pretrial motion alleging laches and defects in the university's

complaint, service of process, and failure to transfer her complaint; and (2) denial of her

motion for recusal. We find no error or abuse of discretion and affirm.

FACTS AND PROCEDURAL BACKGROUND

In February 2008, Sandra Bernklow's dogs received veterinary services at

Washington State University's Veterinary Teaching Hospital. Ms. Bernklow paid nearly

$2,000 toward the charges incurred. Her remaining account balance was $3,030.94. In May, June, and July, the university wrote Ms. Bernklow informing her that payment of the balance was due immediately. On August 5, it mailed Ms. Bernklow a final notice, informing her that if the payment was not received within 30 days, her account would be referred to a collection agency. Ms. Bernklow contends, and the university does not dispute, that some of its demands were premature in light of a payment arrangement that had been agreed at the time of the services.

In 2012, after payment was well overdue, the university referred the matter for collection. On November 15, 2012—over four years after performance of the veterinary services—the university filed a complaint against Ms. Bernklow to recover the $3,030.94 still owed, plus collection costs of $1,515.47.

After filing an answer, Ms. Bernklow filed what she captioned "Defendant's Motion for Dismissal, or Summary Judgement [sic]," asserting several grounds including "defective content of the complaint and related details of service of process" and laches. Clerk's Papers (CP) at 3. Her affidavit in support of the motion asserted that in response to a collection call she received after payment was due, she informed the caller that the university was lucky she was too emotionally distressed to sue for malpractice[1] and that it

---

[1] One of Ms. Bernklow's dogs had been opened up to determine whether its liver cancer could be removed and was found to be inoperable; a second dog was diagnosed as also suffering from liver failure. In response to Ms. Bernklow's unhappiness and complaints about the services provided, the university declined to provide further

2

should be grateful for what she had paid, apologize, and waive the balance. According to her affidavit, the caller replied that "they would just wait several years until the statute of limitations had expired for [her] to file malpractice, then file against [her] and get a judgment." CP at 50.

The trial court, the Honorable William D. Acey, eventually heard argument of Ms. Bernklow's motion and denied it. Ms. Bernklow then moved for Judge Acey's recusal. She relied solely on his conduct of the hearing and decision on her motion to dismiss and for summary judgment. Judge Acey denied the recusal motion.

The case proceeded to a bench trial on July 31, 2013. Judge Acey found in favor of the university and entered judgment against Ms. Bernklow in the amount of $6,970.31.

Ms. Bernklow appeals, assigning error only to his ruling on the motions, not to any findings or conclusions from the bench trial.

## ANALYSIS

Ms. Bernklow assigns error to the trial court's failure to bar the action on the basis of laches, failure to recuse himself, and failure to dismiss the complaint for content and service defects or, alternatively, to transfer it to small claims court. We first address

---

services, and the requirement that she communicate with the director of the hospital rather than the veterinarian who had cared for her dogs became an additional source of her complaints. Ms. Bernklow pointed out to the university that she was an attorney licensed in California.

denial of her motion to dismiss or for summary judgment and then turn to denial of the recusal motion.

### *I. Denial of motion to dismiss or for summary judgment*

#### A. Laches

##### *1. Overview of laches*

"'Laches is an implied waiver arising from knowledge of existing conditions and acquiescence in them.'" *Lopp v. Peninsula Sch. Dist. No. 401*, 90 Wn.2d 754, 759, 585 P.2d 801 (1978) (quoting *Buell v. Bremerton*, 80 Wn.2d 518, 522, 495 P.2d 1358 (1972)). It is an equitable remedy grounded in estoppel. *Crodle v. Dodge*, 99 Wash. 121, 131, 168 P. 986 (1917). The doctrine applies when the defendant affirmatively establishes: "(1) knowledge by plaintiff of facts constituting a cause of action or a reasonable opportunity to discover such facts; (2) unreasonable delay by plaintiff in commencing an action; and (3) damage to defendant resulting from the delay in bringing the action." *Davidson v. State*, 116 Wn.2d 13, 25, 802 P.2d 1374 (1991).

"To constitute laches there must not only be a delay in the assertion of a claim but also some change of condition must have occurred which would make it inequitable to enforce it." *Waldrip v. Olympia Oyster Co.*, 40 Wn.2d 469, 477, 244 P.2d 273 (1952). "The burden of proof is upon the party asserting laches." *Rutter v. Rutter*, 59 Wn.2d 781, 785, 370 P.2d 862 (1962).

4

"Laches is an extraordinary remedy that a party should not, under ordinary circumstances, employ to bar an action short of the applicable statute of limitations." *S. Tacoma Way, LLC v. State*, 146 Wn. App. 639, 649, 191 P.3d 938 (2008), *rev'd on other grounds*, 169 Wn.2d 118, 233 P.3d 871 (2010). Since the purpose of the doctrine is to prevent injustice and hardship, it should not be invoked "when the assertion of the claim, though tardy, is within the time limited by statute, and the rights of no one have been prejudiced by the delay." *Crodle*, 99 Wash. at 131-32. The statute of limitations applicable here—for actions on accounts receivable—is six years. RCW 4.16.040(2).

Whether delay is unreasonable is dependent upon the circumstances of the specific case. *Stewart v. Johnston*, 30 Wn.2d 925, 938, 195 P.2d 119 (1948); *Hogan v. Kyle*, 7 Wash. 595, 601, 35 P. 399 (1894). The reasonableness of the delay is usually dependent not upon the sheer length of time, but upon the damage that delay wrought upon others:

> In determining whether the delay was inexcusable, a court may look to a variety of factors including similar statutory and rule limitation periods. But the main component of the doctrine is not so much the period of delay in bringing the action, but the resulting prejudice and damage to others.

*Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 848-49, 991 P.2d 1161 (2000). "A court will not presume prejudice merely from the fact of a delay." *Id.* at 849. Accordingly, "[s]o long as parties are in the same condition, it matters little whether one presses a right promptly or slowly." *Crodle*, 99 Wash. at 131.

5

Since the university brought its action within the six-year limitation period, Ms. Bernklow must establish that her case involves extraordinary circumstances that would make it inequitable to allow the university to pursue collection. *S. Tacoma Way*, 146 Wn. App. at 649. The trial court's decision on whether equitable relief is appropriate is a question of law that we review de novo. *Niemann v. Vaughn Cmty. Church*, 154 Wn.2d 365, 374, 113 P.3d 463 (2005).

### 2. The motion to dismiss on the basis of laches was necessarily a motion for summary judgment

Ms. Bernklow contends her motion to bar the complaint on the basis of laches did not present a summary judgment issue but presented, instead, a threshold issue that was required to be decided before all others and that the university bore the burden of explaining its delay. She principally relies on the following statement from *State ex rel. Bond v. State:*

> [E]ven though in a trial on the merits the state would have the burden of proving its affirmative defense of laches, the reverse is true on relator's motion for summary judgment. Where the issue of laches has been properly raised, relator must establish that there is no laches or reasonable inference thereof to be drawn from the undisputed facts.

62 Wn.2d 487, 490, 383 P.2d 288 (1963).

The problem with citing this language from *Bond* is that the parties' roles in connection with the State's motion to dismiss the claim of Mr. Bond, a former state employee, was the opposite of this case. In *Bond*, the State, as defendant, contended Mr.

6

Bond's claim was barred by laches, but it was Mr. Bond who (unlike Ms. Bernklow) *disputed* that laches applied when he moved for summary judgment. Accordingly, in the language on which Ms. Bernklow relies, the court explained that because Mr. Bond was the moving party, he bore the usual summary judgment burden, even though the State— as the party *asserting* laches—would bear the burden of proof at trial. Here, Ms. Bernklow was both the party moving for summary judgment <u>and</u> the party asserting laches. She bore the burden of proof at both stages. As *Bond* observes, addressing laches, "In seeking a summary judgment, the moving party *always* has the burden of proving, by uncontroverted facts, that no genuine issue as to any material fact exists." *Id.* (emphasis added).

### 3. *Treating the issue as properly before us, Ms. Bernklow failed to meet her summary judgment burden*

Ordinarily, denial of a motion for summary judgment is not appealable when the matter proceeds to trial. When a trial court denies summary judgment due to factual disputes and a trial is subsequently held on the issue, the losing party must appeal from the sufficiency of evidence presented at trial, not from the denial of summary judgment. *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 35 n.9, 864 P.2d 921 (1993); *and see State v. Jackson*, 82 Wn. App. 594, 608-09 & n.41, 918 P.2d 945 (1996). Nonetheless, the university has responded to Ms. Bernklow's first assignment of error on

the merits. Given our reluctance to decide a case on issues not raised by the parties, *see* RAP 12.1, we review the issue as they have briefed it.

An order granting summary judgment is reviewed de novo, "considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

The parties do not dispute the first element of laches. Only the interrelated elements of unreasonable delay and resulting damage are at issue.

On the issue of unreasonable delay, Ms. Bernklow begins by arguing that she did not cause the delay. The university does not contend that she did.

Ms. Bernklow next argues that a delay of four years is per se unreasonable because, she contends, decisions of the Washington Supreme Court in *Stewart* and *Hogan* require immediate action. She presumably cites the cases for their language that a party "'should commence the proceedings for relief as soon as reasonably possible,'" *Stewart*, 30 Wn.2d at 938 (quoting 3 JOHN NORTON POMEROY & SPENCER W. SYMONS, A TREATISE ON EQUITY JURISPRUDENCE § 817, at 249 (5th ed. 1941), and that "'the delay of either party . . . in not prosecuting his right to the interference of the court by institution of an action . . . may constitute such laches as will disentitle him to the aid of the court.'" *Hogan*, 7 Wash. at 600 (quoting EDWARD FRY, A TREATISE ON THE

8

SPECIFIC PERFORMANCE OF CONTRACTS § 1070 (2d ed. 1884)). But as already observed, both cases hold that whether delay is unreasonable is dependent on the circumstances of the specific case.

The amount of delay that is unreasonable can be relatively short or relatively long, depending on whether changed circumstances make it unjust to allow the claim to proceed, including whether time was of the essence of the parties' agreement. *E.g., Hayden v. City of Port Townsend*, 93 Wn.2d 870, 613 P.2d 1164 (1980), *overruled on other grounds by Save a Neighborhood Env't v. City of Seattle*, 101 Wn.2d 280, 676 P.2d 1006 (1984) (where parties who had changed their positions in reliance on a rezone would be damaged); *Hogan*, 7 Wash. at 601-02 (the parties' agreement explicitly made time of the essence). Even an extensive delay may be considered reasonable where there was no change in circumstances. For example, a delay of seven years did not bar an action to recover delinquent child support in light of the defendant's lack of income during those years, and because the defendant could not "be said to be 'damaged' simply by having to do now what he was legally obligated to do years ago"—pay the past due child support with interest. *In re Marriage of Hunter*, 52 Wn. App. 265, 271 & n.1, 758 P.2d 1019 (1988).

Here, time was not made of the essence.[2] And to be entitled to summary judgment, Ms. Bernklow was required to present undisputed evidence that she was damaged or prejudiced by delay. She contends she was prejudiced because by 2012 she had disposed of her documents relevant to this case, and her memory was not as clear about the events as it had been in 2008. But she identifies no defense she could have asserted as to the cost of her dogs' care other than a claimed offset for veterinary negligence. The university provided the court with billing records. Ms. Bernklow would have been entitled through discovery to copies of any other pertinent records in the university's possession. As far as memories are concerned, one would expect a pet owner to have at least as vivid a recollection of her pet's demise as employees, agents, or students of the university who, in the ordinary course, deal with the medical care of many animals.

Ms. Bernklow also contends she was damaged by the accrual of prejudgment interest. As the court in *Hunter* held, accrued interest on a delinquent debt does not constitute a damage in this analysis.

She contends that revisiting the events would cause her emotional distress, but she does not explain how distress from reliving the events is traceable to delay. Common

---

[2] Ms. Bernklow points to the statement at page 9 of the Brief of Respondent that "Time was of the essence." It is crystal clear from the context that the statement is a drafting error. The statement concludes a section in which the university was arguing just the opposite.

10

experience would suggest that the passage of time might make it less painful to defend against the collection action. Mr. Bernklow also mentions her financial circumstances, but if they have changed, they did so independently of the university's actions.

Finally, Ms. Bernklow contends the university acted in bad faith because the purpose of its delay was to wait out the statute of limitations for veterinary negligence. The university did nothing to prevent Ms. Bernklow from bringing a timely negligence action. And even after the statute of limitations on a negligence claim ran, Ms. Bernklow could assert it as an offset to amounts owed for the veterinary services provided; the only consequence of the running of the statute of limitations was that she could not obtain a net recovery in her favor. *J.C. Felthouse & Co. v. Bresnahan*, 145 Wash. 548, 549, 260 P. 1075 (1927); *Seattle-First Nat'l Bank, N.A. v. Siebol*, 64 Wn. App. 401, 407, 824 P.2d 1252 (1992). If the university did decide to defer suit until a time when a threatened counterclaim would only operate as an offset, that is not, standing alone, bad faith.

Because Ms. Bernklow failed to present undisputed evidence establishing that the university's delay was unreasonable and that she was prejudiced, the trial court properly denied her motion.

*II. Claimed pleading and service defects, and failure to transfer*

Ms. Bernklow argued in her pretrial motion that the trial court should have dismissed the university's complaint because it submitted a number of attachments to the

11

trial court without serving them with her copy of the complaint, and that the complaint was improperly served on her before being filed in court.

Addressing the latter argument first, parties are permitted to serve a summons and complaint before filing it with the court. Under CR 3(a), "a civil action is commenced by service of a copy of a summons together with a copy of a complaint . . . or by filing a complaint." Where service is effected first, the rule further provides, "Upon written demand by any other party, the plaintiff instituting the action shall pay the filing fee and file the summons and complaint."

In support of her complaint about not receiving attachments to the university's complaint, she cites *Mosbrucker v. Greenfield Implement, Inc.*, for its statement, citing CR 10(c), that "[g]enerally, a copy of a written instrument [referred to in] a pleading must be annexed thereto." 54 Wn. App. 647, 652, 774 P.2d 1267 (1989). To begin with, the university's complaint did not refer to a written instrument; secondly, *Mosbrucker* is wrong on that score. As recently observed by our Supreme Court, "While Washington does not specifically require instruments to be attached to pleadings, our rules permit them to be attached." *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 205, 289 P.3d 638 (2012) (citing CR 10(c)). There were no exhibits attached to the university's complaint

12

filed with the court, so none needed to be attached to the copy served on Ms. Bernklow. *See* CP at 1-2.[3]

She makes a related argument that the university failed to produce evidence showing an itemized list of the services she received and their respective costs. But she (1) cites no authority that a plaintiff has a duty to affirmatively plead or produce such detail and (2) elsewhere concedes that a number of supporting materials were eventually served on her. "[I]ssues not supported by argument and citation to authority will not be considered on appeal." *State v. Farmer*, 116 Wn.2d 414, 432, 805 P.2d 200, 812 P.2d 858 (1991).

She argues that the complaint alleges her financial responsibility for a delinquent student account for "educational services" instead of a delinquent client account for "veterinary service[s]." CP at 4. It is clear from Ms. Bernklow's pretrial motion that she was never confused about the nature of her liability to the university. An obvious drafting error is not a basis for dismissing the complaint.

---

[3] A freestanding "Declaration and Assignment" was filed with the court at the same time as the summons and complaint, to which an account statement and other supporting documents were attached. It is included in the record on appeal as an attachment to the final judgment. According to Ms. Bernklow's filings in the trial court, she became aware of the declaration and its attachment within a matter of weeks and in March 2013 was served with a copy of "the entire court file of pleadings plus discovery." CP at 5-6.

13

Finally, for the first time on appeal, Ms. Bernklow argues that "the trial court erred in not . . . transferring [the case] to small claims court." Br. of Appellant at 9. Ms. Bernklow did not request a transfer of the case to district court, nor does she explain how she could have.[4] Under RAP 2.5(a), we will not consider an argument raised for the first time on appeal.

Because the pleadings and service were not flawed, the trial court did not err when it denied Ms. Bernklow's motion to dismiss.

### III. Recusal

Ms. Bernklow's last assignment of error is to Judge Acey's refusal to recuse himself. This court reviews a trial court's recusal decision for an abuse of discretion. *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 840, 14 P.3d 877 (2000). The trial court abuses its discretion when its decision is manifestly unreasonable or is

---

[4] Article IV, section 6 of the Washington Constitution "invests the superior courts with original and general jurisdiction in all cases and in all proceedings in which jurisdiction is not *exclusively vested by law* in some other court or forum." *McIntosh v. Nafziger*, 69 Wn. App. 906, 911, 851 P.2d 713 (1993) (citing *Strenge v. Clarke*, 89 Wn.2d 23, 26, 569 P.2d 60 (1977)). The power to determine the extent of "justice court" (i.e., district court) jurisdiction is lodged in the legislature, which is authorized to prescribe the jurisdiction of justice courts provided that such jurisdiction does not "'trench upon'" the jurisdiction of the superior courts. *McIntosh*, 69 Wn. App. at 911 (quoting CONST. art. IV, § 10 (amend. 65)). That limitation has been interpreted to mean that the investing of original jurisdiction in the superior courts does not prevent the legislature from granting *concurrent* jurisdiction to justice courts in the same class of cases. *Id.*; *cf.* RCW 4.84.030 (plaintiff may be denied costs taxed as attorney fees in actions within the jurisdiction of the district court when commenced in the superior court).

14

exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

"Due process, appearance of fairness and canon 3(D)(1) of the Code of Judicial Conduct require a judge to recuse himself where there is bias against a party or where impartiality can be questioned." *State v. Leon*, 133 Wn. App. 810, 812, 138 P.3d 159 (2006) (citing *Sherman v. State*, 128 Wn.2d 164, 206, 905 P.2d 355 (1995)). Before the appearance of fairness doctrine will be applied, there must be evidence of a judge's actual or potential bias. *State v. Dominguez*, 81 Wn. App. 325, 329, 914 P.2d 141 (1996). If a party presents sufficient evidence of bias, "[t]he test is whether a reasonably prudent and disinterested observer would conclude [the party] obtained a fair, impartial, and neutral trial." *Id.* at 330.

Ms. Bernklow argues that Judge Acey's bias in favor of the university can be inferred because he decided issues before the trial without reading her briefing and only pretended to listen to her arguments. Judges are presumed to properly perform their functions, and we see no evidence from Judge Acey's decision-making that he did not do so here. Ms. Bernklow presents no evidence other than her own belief to refute this presumption.

She also contends bias was demonstrated when Judge Acey denied her motion to dismiss for laches because the university did not explain its delay or oppose her motion, and she was therefore entitled to judgment as a matter of law. We obviously disagree,

15

having affirmed denial of her motion. Judge Acey could see, as we can, that Ms. Bernklow failed to meet her summary judgment burden.

Finally, Ms. Bernklow argues that bias is demonstrated by the fact that Judge Acey conducted the recusal hearing in an empty room, refused to allow her motion to be read into the record, and then calendared her indigence hearing in a crowded courtroom. Recusal motions are rare, requests to proceed as indigent are common, and we are not surprised that the former might be specially set while the latter would be set on a docket. It is unsurprising that a court would see no need to have a motion that is on file with the court read into the record.

Ms. Bernklow shows no abuse of discretion in Judge Acey's denial of her recusal motion.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, A.C.J.

16