**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| LORI SHAVLIK,<br><br>     Appellant,<br><br>   v.<br><br>JOLENE JOVEE,<br><br>     Respondent. | No. 81889-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — Lori Shavlik appeals an order extending a one-year civil antiharassment protection order against her and an order denying her motion for revision. Representing herself, Shavlik contends that the antiharassment order must be vacated because (1) the superior court lacked jurisdiction, (2) the petition for the order was based on false information, and (3) the court was biased against her. For the reasons discussed below, we affirm.

## I. BACKGROUND

Jolene Jovee and her ex-husband Nathan Jovee are the parents of three boys: L.J., S.J., and B.J.[1] Nathan's mother, Lori Shavlik, is the paternal grandmother of the boys. Jolene and her significant other, Brandon Huber, are the parents of one boy, L.H.

---

[1] We refer to Jolene Jovee and Nathan Jovee by their first names for clarity. We intend no disrespect.

Nathan and Jolene divorced in Oklahoma in 2018. The Oklahoma divorce decree and parenting plan awarded custody to Jolene and granted visitation to Nathan on every other weekend and certain holidays.

On March 1, 2019, Jolene petitioned in superior court for a civil antiharassment protection order against Shavlik based on an incident that took place on February 16, 2019. S.J. (age 7) and B.J. (age 4) needed to go to Fife High School that afternoon to weigh in for their wrestling tournament. Jolene said Nathan knew and agreed that she and Huber would be there even though it was Nathan's visitation weekend. Jolene expected Nathan to transport the boys to the weigh in, so she was surprised to discover that Shavlik brought them instead. Jolene alleged that when she walked into the gym and approached the boys to greet them and ask where their father was, Shavlik became frantic, aggressive, and enraged. Jolene said that B.J. reached for her and began to cry, but when she tried to comfort him, Shavlik angrily pushed her away and tried to take the boys outside even though they were not fully dressed. Jolene said both boys cried and told her they were scared of Shavlik. Jolene asked Huber to call the police.

When police arrived, Jolene showed them the Oklahoma divorce decree and parenting plan and said she did not feel safe allowing Shavlik to transport the boys back to Nathan's house. According to the police report, Shavlik claimed that Jolene was interfering with Nathan's visitation time and Jolene believed Nathan violated the parenting plan by not being present at the event. Based on

language in the parenting plan that reasonable accommodation be made to get the children to activities, police allowed Shavlik to take the boys back to Nathan's house.

A hearing on the petition took place on March 1, 2019, with Jolene represented by counsel. Shavlik did not appear. When the superior court commissioner asked whether Jolene was supposed to have custody of the children at the weigh in, counsel said, "[A]t that sporting event, yes." At the conclusion of the hearing, the commissioner entered a temporary order of protection against Shavlik. Minors addressed by the order included Jolene and Nathan's three children and Jolene and Huber's child. The order restrained Shavlik from making any attempts to contact or keep under surveillance Jolene or any of Jolene's four children. The order further specified that Shavlik was "restrained from any contact whatsoever, no phone, mail, email, texting or third party contact, or through social media." The court reissued the temporary order on March 15, 2019 to allow Jolene additional time to serve Shavlik.

On March 29, 2019, the superior court held a hearing to determine whether Shavlik had committed unlawful harassment. Jolene and her counsel were present; Shavlik was not. Jolene requested a three-year order restraining Shavlik from any contact with all four children, even when Shavlik's grandchildren had visitation with Nathan. Although the court ruled that it "does not find it reasonable to restrain the respondent from exchanges of the children and other times when the children are in their father's care," it issued a final order that

restrained Shavlik from making any attempts to contact or surveil Jolene and all four children, "directly or indirectly, or through third parties." The order further specified as follows:

> No contact in public places, no contact with the youngest minor. No contact with the minors at exchanges. . . . No contact at sporting and school events of the minors addressed in this petition, court matters involving the petitioner and the minors addressed in this order, no contact through email, texting, or social media.

On April 21 and April 28, 2019, Jolene alleged in police reports that Shavlik violated the order by being at Nathan's house while L.J, S.J., and B.J. were present. A prosecutor charged Shavlik, but later dismissed the charges without prejudice.

At a hearing on May 24, 2019, the superior court granted Shavlik's motion to vacate the March 29, 2019 protection order on the ground that it was void for lack of service. The court concurrently entered a new temporary order. Unlike the previous temporary order, it did not restrain Shavlik from contacting her grandchildren. Rather, the order restrained Shavlik from making any attempts to contact Jolene and L.H. and from being within 100 yards of the exchange location of Jolene and Nathan's children for visitation. The order further specified that Shavlik's contact with them "is limited to [Nathan's] visitation and she [is] excluded from sporting events."

On June 18, 2019, the court again held a hearing on the antiharassment petition. Jolene was represented by counsel and Shavlik appeared pro se. Following the hearing, the court entered a final one-year order of protection that restrained Shavlik from making any attempts to contact Jolene and from being

4

within 100 yards of the exchange location of Jolene and Nathan's children for visitation with Nathan. The order further specified that Shavlik's contact with her grandchildren is limited to Nathan's visitation "except not at any scheduled events at which [Jolene] is present." The order reserved ruling on attorney fees "as well as to findings of vexatious litigant."

On May 13, 2020, Jolene contacted police to report that Shavlik had violated the order of protection by e-mailing her in an apparent attempt to accomplish service of court documents. Jolene responded to the e-mail, stating, "I am not sure what this is because no attachments will open. I did not consent to service by email." Shavlik still sent 13 more e-mails to Jolene. Jolene reported the additional e-mail incidents to police.

On June 15, 2020, Jolene petitioned for renewal of the June 18, 2019 final order of protection based on Shavlik's unwanted e-mails and on the alleged April 2019 violations of the temporary protection order. Shavlik responded, stating that she intended to serve Jolene by e-mail. Shavlik also moved for contempt against Jolene.

A hearing took place on August 26, 2020. Both parties appeared at the hearing pro se. The superior court commissioner denied Shavlik's motion for contempt and granted Jolene's petition for renewal, finding that Shavlik "has not shown by a preponderance of the evidence that acts of unlawful harassment will not continue." The renewed order was essentially identical in its terms to the

5

June 18, 2019 order. The order expired on August 26, 2021, one year after it issued.[2]

Shavlik moved to revise the August 26, 2020 order, which the superior court denied on September 17, 2020. Shavlik now appeals the August 26, 2020 renewed protection order and the order denying her motion for revision.[3]

## II. ANALYSIS

Preliminarily, we observe that a pro se litigant is bound by the same rules of procedure and substantive law as a licensed attorney. Holder v. City of Vancouver, 136 Wn. App. 104, 106, 147 P.3d 641 (2006).

"The scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties." Clark County v. W. Wash. Growth Mgmt. Hr'gs Review Bd., 177 Wn.2d 136, 144, 298 P.3d 704 (2013) (citing RAP 5.3(a); 10.3(a), (g); and 12.1). "'Only issues raised in the assignments of error . . . and argued to the appellate court are considered on appeal.'" Weyerhauser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654,

---

[2] No issue is raised on appeal about whether Shavlik's appeal was rendered moot when the renewed order expired on August 21, 2021. "Generally, we will dismiss an appeal where only moot or abstract questions remain or where the issues raised in the trial court no longer exist." Price v. Price, 174 Wn. App. 894, 902, 301 P.3d 486 (2013). A case is not moot if a court can still provide effective relief. Hough v. Stockbridge, 113 Wn. App. 532, 537, 54 P.3d 192 (2002), reversed on other grounds, 150 Wn.2d 234, 76 P.3d 216 (2003) (noting that the stigma of an expired antiharassment order may be removed by a favorable decision). We decline to dismiss Shavlik's appeal on this basis.

[3] Jolene did not file a respondent's brief. "A respondent who elects not to file a brief allows [their] opponent to put unanswered arguments before the court, and the court is entitled to make its decision based on the argument and record before it." Adams v. Dep't of Labor & Indus., 128 Wn.2d 224, 229, 905 P.2d 1220 (1995).

693, 15 P.3d 115 (2000) (alteration in original) (quoting State v. Kalakosky, 121 Wn.2d 525, 540 n.18, 852 P.2d 1064 (1993)).

A. Jurisdiction

Shavlik says that, under RCW 10.14.150, district courts have exclusive original jurisdiction to hear antiharassment claims. She contends that the district court is empowered to transfer such an action to superior court only if certain statutory conditions are met. Because Jolene initiated the action in superior court without going to district court first, Shavlik contends that the antiharassment orders are void because the superior court never acquired jurisdiction to hear the case. Shavlik is incorrect.

We review de novo questions of subject matter jurisdiction. Dougherty v. Dep't of Labor & Indus., 150 Wn.2d 310, 314, 76 P.3d 1183 (2003). In 1993, the Washington Constitution was amended to vest both superior courts and district courts with original jurisdiction in cases of equity. See WASH. CONST. art. IV, § 6 ("Superior courts and district courts have concurrent jurisdiction in cases in equity."). An action under chapter 10.14 RCW is an action in equity. Hough v. Stockbridge, 150 Wn.2d 234, 236, 76 P.3d 216 (2003). The vesting of original jurisdiction in the superior courts does not prevent the legislature from granting concurrent jurisdiction to district courts in the same class of cases. McIntosh v. Nafziger, 69 Wn. App. 906, 911, 851 P.2d 713 (1993). The superior court retains original jurisdiction unless the legislature vests exclusive jurisdiction in another court. Ledgerwood v. Lansdowne, 120 Wn. App. 414, 419, 85 P.3d 950 (2004).

It is well established that RCW 10.14.150 does not vest exclusive jurisdiction over antiharassment cases in the district court. McIntosh, 69 Wn. App. at 912 ("[W]e construe RCW 10.14.150 as providing the district and superior courts with concurrent original jurisdiction, thereby allowing civil anti-harassment actions to be brought either in the district or superior courts"); Ledgerwood, 120 Wn. App at 422 (holding that the superior court has original jurisdiction to hear antiharassment petitions). The superior court did not lack subject matter jurisdiction over the proceedings in this case.

B. Unlawful Harassment

Shavlik contends that Jolene failed to show that her actions constituted "unlawful harassment" as defined by RCW 10.14.020. We review the trial court's decision to grant or deny a protection order for an abuse of discretion. RCW 10.14.080(6); State v. Noah, 103 Wn. App. 29, 43, 9 P.3d 858 (2000). A trial court abuses its discretion if its ruling is "manifestly unreasonable or is based on untenable grounds or reasons." State v. Rapozo, 114 Wn. App. 321, 323, 58 P.3d 290 (2002). A court's decision stems from untenable grounds "if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

We review the trial court's findings for substantial evidence. In re Marriage of Rideout, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003) (where court holds a hearing and weighs contradictory evidence before entry of a protection order, the proper standard of review is substantial evidence). "Substantial

8

evidence" exists if the evidence is sufficient to persuade a fair-minded rational person of the truth of the evidence. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). We defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony. In re Vulnerable Adult Petition of Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

A superior court may enter a civil antiharassment protection order if it finds by a preponderance of the evidence that "unlawful harassment" exists. RCW 10.14.080(3); Noah, 103 Wn. App. at 38. "Unlawful harassment" is "a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose." RCW 10.14.020(2). A "course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." RCW 10.14.020(1).

A petitioner may seek to renew a civil antiharassment order prior to its expiration. RCW 10.14.080(5). The petition for renewal must state the reasons why the petitioner seeks to renew the protection order. Id. The court must then renew the order "unless the respondent proves by a preponderance of the evidence that the respondent will not resume harassment of the petitioner when the order expires." Id.

Shavlik contends that the superior court's antiharassment orders stemmed from fraud. This is so, she contends, because Jolene's counsel misled the court when he said Jolene was authorized to take custody of the children at the

9

wrestling weigh-in. Shavlik also says that her behavior at the weigh-in cannot constitute "unlawful harassment" because it served the legitimate and lawful purpose of seeking to prevent Jolene from interfering with Nathan's visitation time.

Regardless of the merit of these assertions, they have no bearing on the matter at issue in this appeal, which is whether the superior court erred in entering a renewed order of protection on August 26, 2020. Pursuant to RCW 10.14.080(5), Jolene petitioned for renewal along with a declaration stating the reasons why she sought to renew the petition. Jolene stated that her counsel withdrew on April 29, 2020 because she could not pay accumulated charges of more than $30,000. Before counsel withdrew, he and Shavlik had an agreement to serve documents by e-mail. After counsel withdrew, Jolene responded to Shavlik by e-mail and included a mailing address at which she agreed to accept service. Shavlik then e-mailed court documents to Jolene. Jolene responded that she did not consent to service by e-mail. Shavlik still e-mailed Jolene 13 more times. Jolene also pointed to Shavlik's alleged violations in April 2019.

Shavlik's response asserted that Jolene failed to explain or document with evidence any course of conduct that violated the order. Shavlik also stated that she intended to keep serving Jolene by e-mail. But the June 18, 2019 order plainly restrains Shavlik from attempting to contact her. "Course of conduct" includes "the sending of an electronic communication." RCW 10.14.020(1). Jolene submitted evidence documenting that Shavlik e-mailed her repeatedly,

despite being informed that Jolene would only accept service by mail.  We conclude that the superior court did not err by ruling that Shavlik "has not shown by a preponderance of the evidence that acts of unlawful harassment will not continue."[4]

###### C. Disqualification

Shavlik states that the superior court commissioner who entered the August 26, 2020 renewed protection order should have been disqualified for showing actual bias and prejudice against her.

"Due process, the appearance of fairness, and Canon 3(D)(1) of the Code of Judicial Conduct require disqualification of a judge who is biased against a party or whose impartiality may be reasonably questioned."  Wolfkill Feed and Fertilizer Corp. v. Martin, 103 Wn. App. 836, 841, 14 P.3d 877 (2000).  We presume a trial court to regularly and properly perform its functions without prejudice or bias.  West v. Wash. Ass'n of County Officials, 162 Wn. App 120, 136, 252 P.3d 406 (2011).  "The test for determining whether a judge's impartiality might reasonably be questioned is an objective one that assumes the reasonable person knows and understands all the relevant facts."  In re Estate of

---

[4] Shavlik also contends that the March 1, 2019 and May 24, 2019 temporary orders should be vacated based on fraud.  And she asserts that the June 18, 2019 final order should be vacated because Jolene is the one who engaged in unlawful harassment.  But the temporary orders became moot when the superior court entered the final order on June 18, 2019.  See Ferry County Title & Escrow v. Fogle's Garage, Inc., 4 Wn. App. 874, 881, 484 P.2d 458 (1971) (a final judgment renders the propriety of a temporary order moot).  And Shavlik did not timely appeal the final order as required by RAP 5.2(a).  In any case, the minute entry for the June 18, 2019 hearing shows that the court carefully considered Shavlik's arguments and entered a final order that was far less restrictive than the temporary orders.

Hayes, 185 Wn. App. 567, 607, 342 P.3d 1161 (2015) (citing Sherman v. State, 128 Wn.2d 164, 206, 905 P.2d 355 (1995)).  The party claiming bias or prejudice must support the claim with evidence.  An appearance of fairness doctrine claim requires evidence of the judicial officer's actual or potential bias.  State v. Dugan, 96 Wn. App. 346, 354, 979 P.2d 885 (1999).  "[M]ere speculation is not enough." Estate of Hayes, 185 Wn. App. at 607.

Shavlik contends that the superior court commissioner demonstrated actual bias and prejudice against her because the August 26, 2020 renewed order of protection contained a notation indicating that judgment was reserved "as to findings of vexatious litigation."[5]  Shavlik contends that the superior court commissioner never provided notice that a vexatious litigation finding was being contemplated or gave her an opportunity to argue against it, thereby demonstrating actual bias by restricting Shavlik's access to the courts without due process.

We disagree.  Shavlik's speculative claim is not enough to demonstrate actual bias or prejudice.  Moreover, the record does not support it.  The minute entry for the June 18, 2019 hearing, at which Shavlik was present, notes that "petitioner's motion for a finding of vexatious litigation is reserved."  The June 18, 2019 order reflects this.  Shavlik expressly acknowledged receipt of a copy of the

---

[5] "[I]n Washington, trial courts have the authority to enjoin a party from engaging in litigation upon a 'specific and detailed showing of a pattern of abusive and frivolous litigation.'" Yurtis v. Phipps, 143 Wn. App. 680, 693, 181 P.3d 849 (2008) (quoting Whatcom County v. Kane, 31 Wn. App. 250, 253, 640 P.2d 1075 (1981)).

order.  She had notice of the matter more than a year before the August 26, 2020 hearing.

We affirm.

_____
Chun, J.

WE CONCUR:

_____        _____
Mann, C.J.                                      Dwyer, J.